In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1337

BRIAN S. BURD,

*Plaintiff-Appellant*,

*v.*

GAIL SESSLER, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cv-05164—**Edmond E. Chang**, *Judge*.

ARGUED OCTOBER 3, 2012—DECIDED DECEMBER 17, 2012

Before FLAUM, RIPPLE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Brian Burd alleges in this action under 42 U.S.C. § 1983 that prison officials deprived him of access to the courts by preventing him from using library resources to prepare a motion to withdraw his guilty plea. As the case comes to us, he seeks damages from the prison officials. The district court held that such a claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). We agree with the district court and therefore affirm its judgment.

# I

## BACKGROUND

### 1.

On December 7, 2009, Mr. Burd pleaded guilty in Illinois state court to attempted burglary. Under Illinois practice, he had thirty days to file a motion to withdraw his guilty plea. For the first twenty-nine days of this period, he was held at prison facilities that lacked library resources of any kind. On the thirtieth day, Mr. Burd was transferred to Sheridan Correctional Center. He immediately asked to use its library, but Sheridan officials told him the library was closed.

Mr. Burd missed the deadline to file his motion, but he continued to seek access to Sheridan's law library. He filled out request slips, but each time he was denied access because the library was closed. When he explained to defendant Gail Sessler, the educational administrator at Sheridan, that he wanted to research a motion to withdraw his guilty plea or an appeal of his sentence, she told him that any such action would be untimely and denied him access to the library. Mr. Burd also requested that a fellow inmate, Todd Howell, be permitted to assist him with his motion. He never received a response to his request, and when he filed a grievance about the failure to respond, he was told that the matter was moot because Howell had been transferred from Sheridan.

Mr. Burd did not seek to set aside his conviction through federal or state habeas corpus before filing this

§ 1983 action. In November 2011, Mr. Burd was paroled from prison. The mandatory supervised release portion of his sentence was scheduled to expire in November 2012.

**2.**

In his complaint, Mr. Burd alleges that prison officials at Sheridan and other Illinois correctional officials denied him his right of access to the courts by depriving him of the library materials that he needed to file his motion and to research possible grounds for appealing his sentence. The district court, after dismissing Mr. Burd's claim for injunctive relief,[1] invited the parties to address whether, under *Heck*, a favorable determination on the damages claim necessarily would imply the invalidity of Mr. Burd's conviction and therefore warrant the dismissal of the damages claim as well. The defendants subsequently moved to dismiss the claim for damages, arguing that *Heck* barred such a claim. The district court granted the motion.

---

[1] In his amended complaint, Mr. Burd sought injunctive relief. He asked the district court to require that the defendants "provide access to the library and/or library resources to Burd and other inmates in the future." R.22 at 7. On June 21, 2011, the district court dismissed without prejudice this prayer for injunctive relief based on Mr. Burd's concession that he lacked standing to raise such a claim because, at the time of filing, he no longer was housed in a prison. R.55 at 1-2. Mr. Burd does not appeal this dismissal and so his entitlement to injunctive relief is not before us on appeal.

## II

## DISCUSSION

As this case comes to us, it presents the question of whether Mr. Burd may seek damages against the defendants in their individual capacities for the alleged violation of Mr. Burd's right of access to the courts, despite *Heck*'s "favorable termination requirement." *See Nelson v. Campbell*, 541 U.S. 637, 646-47 (2004). In *Nelson*, the Supreme Court explained succinctly that requirement:

> Although damages are not an available habeas remedy, . . . a § 1983 suit for damages that would necessarily imply the invalidity of the fact of an inmate's conviction, or necessarily imply the invalidity of the length of an inmate's sentence, is not cognizable under § 1983 unless and until the inmate obtains favorable termination of a state, or federal habeas, challenge to his conviction or sentence.

*Id*. at 646 (quoting *Heck,* 512 U.S. at 487) (internal quotation marks omitted); *see Edwards v. Balisok,* 520 U.S. 641, 648 (1997). The Court reasoned that, because habeas corpus is the exclusive remedy for a challenge to the fact or duration of one's confinement, *see Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973), an inmate must first seek to set aside his conviction through habeas corpus before initiating a § 1983 action that necessarily calls that conviction into doubt. *Heck*, 512 U.S. at 487.

Mr. Burd submits that the favorable termination requirement does not bar his claim for monetary damages

because, in this situation, such a judgment would not necessarily call into question the validity of his conviction or sentence. He further argues that the unavailability of collateral relief at this point in the litigation makes *Heck*'s favorable termination requirement inapplicable. We shall examine each of these arguments in turn.

**A.**

We address first Mr. Burd's contention that the favorable termination requirement of *Heck* and its progeny is inapplicable because an award of damages for having been denied an opportunity to research his motion to withdraw his plea or his right to appeal his sentence would not necessarily imply that his conviction or sentence is invalid. Mr. Burd submits that his situation is analogous to those presented to the Supreme Court in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), and in *Skinner v. Switzer*, 131 S. Ct. 1289 (2011). In *Dotson*, the Court examined the application of *Heck* to a suit challenging procedures in a prison parole hearing; in *Skinner*, the Court examined the application of *Heck* to a suit seeking DNA testing. In both cases, the Court held that *Heck* did not bar the § 1983 action for injunctive relief. In *Dotson*, the Court concluded that a successful challenge to the *procedures* used in prison parole hearings would not necessarily entail immediate or speedier release. 544 U.S. at 82. In *Skinner*, the Court noted that DNA testing "may prove exculpatory, inculpatory, or inconclusive." 131 S. Ct. at 1293.

In both of these cases, the plaintiff was seeking pro-spective relief to ensure that he was treated fairly in the underlying proceedings. In *Dotson*, the plaintiff sought a change in parole procedures under which his case would be heard. He asked for no alteration in his confinement status, only that any adjudication of that status be conducted in a manner that comported with federal constitutional standards. In *Skinner*, the plaintiff sought access to biological evidence for the purpose of forensic testing. 131 S. Ct. at 1296. He planned to use the tests to seek relief from a criminal conviction. In both cases, the Justices held that the favorable termination requirement of *Heck* was not implicated because, should the plaintiff obtain the relief requested, the validity of his underlying conviction or confinement would not be put in question. *Dotson*, 544 U.S. at 82; *Skinner*, 131 S. Ct. at 1298. Rather, the prisoner simply would have been af-forded procedural pathways that, if successfully em-ployed, might lead to the overturning of the underlying conviction. *Dotson* and *Skinner* simply apply the principle described in *Heck*: "[I]f the district court determines that the plaintiff's [§ 1983] action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." 512 U.S. at 487.

Mr. Burd sees the principle articulated in *Skinner* and *Dotson* as controlling in his case. He points out that his access-to-courts claim does not challenge directly his underlying criminal conviction, despite the fact that he admits that he sought access to the courts to withdraw

his guilty plea. Invoking *Lewis v. Casey*, 518 U.S. 343 (1996), and *Christopher v. Harbury*, 536 U.S. 403 (2002), Mr. Burd further argues that "the loss of an *opportunity* to seek some particular order of relief" can form the basis of an access-to-courts claim. *Harbury*, 536 U.S. at 414 (emphasis added). Consequently, Mr. Burd maintains that he need only demonstrate that his lost, underlying claim—here, a lost opportunity to withdraw a guilty plea or to appeal—would have been non-frivolous or "arguable," not that it would have been successful. *See id.* at 415; *Lewis*, 518 U.S. at 353 n.3, 356; *In re Maxy*, 674 F.3d 658, 660-61 (7th Cir. 2012).

This argument gives too crabbed a reading to the scope of the bar established in *Heck*: "[T]he district court must consider whether a *judgment* in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487 (emphasis added). This bar requires us to evaluate the substantive requirements for obtaining the particular remedy—damages—that Mr. Burd seeks on his access-to-courts claim. We addressed the problem of damages in a prisoner access-to-courts claim in *Hoard v. Reddy*, 175 F.3d 531 (7th Cir. 1999). In *Hoard,* an inmate alleged that prison officials had prevented him from mounting a state-court collateral attack on his conviction. He therefore brought an action against them for damages. We concluded "that only prospective relief is available in a prisoner's suit complaining of denial of access to the courts unless he has succeeded in getting his conviction annulled, since otherwise an effort to obtain damages would be blocked by *Heck*." *Id.* at 533. *Hoard* acknowledged that this

ruling seemed paradoxical alongside *Lewis*'s holding that a § 1983 plaintiff in an access-to-courts case needs only a non-frivolous, rather than meritorious, claim:

> To get damages you must prove you lost something of monetizable value; but this is not required for an injunction—indeed, the inadequacy of one's damages remedy is normally a prerequisite to injunctive relief. If a prisoner whose access to the courts is being blocked in violation of the Constitution cannot prove that, had it not been for the blockage, he would have won his case or at least settled it for more than $0 (the point emphasized in *Lewis*), he cannot get damages but he can get an injunction. In a case such as *Heck*, where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and so he cannot get damages until the conviction is invalidated. But suppose that he is complaining instead about being hindered in his efforts to rectify illegal prison conditions. Since it is well known (and emphasized in both *Lewis* and *Walters*) that colorable claims have a settlement value, the prisoner may be able to show that had he not been hindered in prosecuting his claim he might have gotten some money for it, even if it wasn't a sure winner. He has to show that the claim was colorable and so had some value in the litigation market but he does not have to establish the validity (as distinct from colorableness) of the claim as a precondition to

> obtaining damages. In the setting of *Heck*, there
> is nothing corresponding to a colorable claim;
> either the conviction was invalid, in which case
> the defendant suffered a legally cognizable harm,
> or it is not and he did not.

*Hoard*, 175 F.3d at 533-34. What we said in *Hoard* is compatible with what we said in *Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir. 1998). Nance, an Illinois state prisoner, brought an action alleging denial of access to the courts after prison officials lost a box containing litigation-related documents during a transfer of Nance from one institution in the Illinois prison system to another. In affirming the district court's dismissal of the case, we emphasized the role that remedy plays in determining the applicability of *Heck*:

> To establish a deprivation of access to the courts, a
> prisoner must show that unjustified acts or condi-
> tions "hindered his efforts to pursue a legal claim."
> *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135
> L.Ed.2d 606 (1996). If the hindrance is ongoing,
> prospective relief can compel the state to restore
> access so that the claim may be vindicated. This
> was the theory behind the order in *Bounds v.
> Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72
> (1977), to improve the prison's law library. But
> Nance does not protest an ongoing hindrance
> or contend that another deprivation of legal mate-
> rials is likely. He has been released from the
> state's custody. Only damages are available. But
> damages for what injury? If the injury in question

is losing the underlying case, then *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), comes into play. *Heck* holds that a damages remedy that necessarily implies the invalidity of a criminal conviction (or the loss of good-time credits, *see Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)) is impermissible while that conviction stands. Nance pleaded guilty; his motion to withdraw the plea was denied; and although the prison's unconstitutional hindrance of his efforts to withdraw the plea (if that is what occurred) would be a good ground for a new hearing on the motion to set aside the plea, it would not establish that Nance is entitled to damages for wrongful incarceration—not unless he went to trial and was acquitted, or the invalidity of his incarceration was established in some other fashion. The holding of *Lewis* that a claim based on deprivation of access to the courts requires proof of concrete injury, combined with the holding of *Heck*, means that a prisoner in Nance's position must have the judgment annulled before damages are available for wrongful imprisonment.

*Nance*, 147 F.3d at 591.

The approach of *Nance* and *Hoard* establish the path that we must follow today. Because the underlying claim for which Mr. Burd sought access to the prison law library was the opportunity to withdraw his guilty plea, he cannot demonstrate the requisite injury without

demonstrating that there is merit to his claim that he should have been able to withdraw the plea. Such a showing necessarily would implicate the validity of the judgment of conviction that he incurred on account of that guilty plea. The rule in *Heck* forbids the maintenance of such a damages action until the plaintiff can demonstrate his injury by establishing the invalidity of the underlying *judgment.* Accordingly, we conclude that Mr. Burd has not established a basis for recovering any type of damage relief under § 1983.[2]

**B.**

Alternatively, Mr. Burd urges that, even if success in his § 1983 action would imply that his conviction is invalid, his claim for damages should not be dismissed under *Heck* because collateral relief is not available to him. We have held that, where a plaintiff cannot obtain collateral relief to satisfy *Heck*'s favorable termination requirement, his action may proceed under § 1983 without running afoul of *Heck. See Simpson v. Nickel*, 450 F.3d 303, 307 (7th Cir. 2006); *DeWalt v. Carter*, 224 F.3d

---

[2] Mr. Burd states in passing that, if permitted to proceed to trial, he would be entitled to nominal damages in addition to compensatory and possibly punitive damages. We do not reach this issue because Mr. Burd did not request this relief in his amended complaint and fails to offer more than a brief mention of it in his brief before this court. Specifically, he makes no argument as to how he could maintain an action for nominal damages in light of the *Heck* bar. *See Edwards v. Balisok*, 520 U.S. 641, 644-46 (1997).

607, 613, 616-18 (7th Cir. 2000); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999).[3]

Relying on this principle, Mr. Burd focuses on his recent release from prison and his imminent release from mandatory supervisory release. Release from prison does not, standing alone, eliminate the possibility of habeas corpus relief because mandatory supervised release often entails sufficient restraints on liberty to meet the "in custody" requirement of habeas corpus. *See Cochran v. Buss*, 381 F.3d 637, 640 (7th Cir. 2004). At the time of argument, Mr. Burd was still serving supervised release, which was scheduled to end November 2012. Once Mr. Burd's supervised release expires, any subsequent habeas corpus petition may be foreclosed due to failure to meet the "in custody" requirement at the time of filing. *Cf. Spencer v. Kemna*, 523 U.S. 1, 8 (1998).[4]

---

[3] This issue has caused a split among the circuits. *See Cohen v. Longshore*, 621 F.3d 1311, 1315-16 (10th Cir. 2010) (collecting cases). The Supreme Court has not specified, in a majority holding, whether *Heck* applies where habeas corpus relief is unavailable, although five Justices in one opinion expressed their views that it should not. *See Spencer v. Kemna*, 523 U.S. 1, 19-21, 25 n.8 (1998) (concurring and dissenting opinions); *see also Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004) (recognizing the open question but declining to resolve it). We follow our previous opinions in this regard.

[4] In *Nance v. Vieregge*, 147 F.3d 589 (7th Cir. 1998), we noted that Illinois offers a remedy "along the lines of coram nobis to wipe out lingering civil disabilities" and suggested that the

(continued...)

He claims, however, that habeas corpus relief is no longer available to him since he is no longer in custody. We cannot accept this argument. In agreement with those circuits that already have had to address the situation, we hold that *Heck* applies where a § 1983 plaintiff *could* have sought collateral relief at an earlier time but declined the opportunity and waited until collateral relief became unavailable before suing. *See Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 601 (6th Cir. 2007); *Guerrero v. Gates*, 442 F.3d 697, 704-05 (9th Cir. 2006). Permitting a plaintiff who ignored his opportunity to seek collateral relief while incarcerated to skirt the *Heck* bar simply by waiting to bring a § 1983 claim until habeas is no longer available undermines *Heck* and is a far cry from the concerns, as we understand them, of the concurring Justices in *Spencer* for those individuals who were precluded by a legal impediment from bringing an action for collateral relief.

The record reveals no impediment that prevented Mr. Burd from seeking collateral relief during his period of incarceration. Mr. Burd has not explained his failure to seek such relief while he was still in custody or why such failure is excusable. We therefore join the Sixth and Ninth Circuits in holding that *Heck* bars a § 1983

---

[4] (...continued)
availability of such a remedy to someone in Mr. Burd's position might preclude monetary relief under the rule of *Heck. Id.* at 591. Neither party has addressed this possibility; we therefore pretermit further consideration of it here.

action where: (1) favorable judgment would necessarily call into question the validity of the underlying conviction or sentence and (2) the plaintiff could have pursued collateral relief but failed to do so in a timely manner. We therefore conclude that this case is barred by *Heck*.

## Conclusion

The district court correctly ruled that *Heck* bars Mr. Burd's action under § 1983. Accordingly, we affirm the judgment of the district court.

AFFIRMED