**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1960
_____

TROY COULSTON,
                                        Appellant

v.

SUPERINTENDENT HOUTZDALE SCI; KENNETH HOLLIBAUGH; SECRETARY
PENNSYLVANIA DEPARTMENT OF CORRECTIONS; SEAN DOMANICK;
ROBERT ROSENBAUM; DAVID CLOSE; DAVID KESSLING; SERGEANT JOHN
SAWTELLE; ROBERT REED; ROBERT MACINTYRE; TRACY WILLIAMS;
DORINA VARNER; JOHN DOE
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3:12-cv-00154)
District Judge:  Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 8, 2016
Before:  AMBRO, SHWARTZ and NYGAARD, Circuit Judges

(Opinion filed: June 9, 2016)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Troy Coulston appeals the District Court's judgment in favor of Defendants.  For the reasons below, we will affirm.

## I.  Background

Troy Coulston is a state prisoner housed at SCI Houtzdale.  He is serving a life sentence for murder and aggravated robbery.  Coulston was moved to the Restricted Housing Unit ("RHU") for an unrelated violation of prison rules.  During the move, two corrections officers found that Coulston had four records boxes.  Because RHU prisoners were limited to one records box, the officers told him they would seize and destroy all four boxes, as they were considered "contraband" under DC-ADM 815.[1]  Although Coulston objected that the boxes contained legal material that he needed to file seven non-frivolous actions in Pennsylvania state courts, the officers seized all of the boxes and issued him a confiscation slip.  The officers also cited him with misconduct for possessing contraband and disobeying a direct order.

Coulston filed a prison grievance "in [an] effort to stop prison officials from destroying [or] altering" his legal documents, which would interfere with his "preparation to file a PCRA appeal petition."  His grievance was denied, and his appeals were unsuccessful.  So too were his challenges to his misconduct citations.

Coulston then filed suit under 42 U.S.C. § 1983, claiming, inter alia, that Defendants—the prison guards who confiscated his materials, the officials who ruled against him in the disciplinary and grievance proceedings, and the Secretary of the Department of Corrections—interfered with his access to courts by confiscating and

---

[1] That provision prohibits generally the possession of "contraband."

destroying his legal materials. Specifically, Coulston alleged that in those materials was a declaration sent to him by Desmond McDougald. McDougald declared that he had met Coulston's co-defendant, Mr. White, while both were prisoners at SCI Huntington. McDougald also declared that Mr. White had confessed that he, and not Coulston, had committed the homicide for which Coulston was convicted. Mr. White said that he had removed his winter glove so that he could shoot the victim, and then he shut the victim's car door with his bare hand, accidentally leaving his fingerprint on the car door. Mr. White stated that the state recovered his fingerprint from the victim's car but never disclosed that information to Coulston, and that the prosecution gave Mr. White a favorable plea offer in exchange for his perjured trial testimony, which ensured Coulston's conviction. In addition to the declaration, Coulston claimed that McDougald had sent him the Philadelphia Police forensic fingerprint report showing that Mr. White's fingerprint was recovered from the car in which the victim was found.

Coulston's complaint alleged that he had received McDougald's declaration and the fingerprint report approximately two weeks before Defendants seized his legal material. He claimed that he was going to use those materials to file (1) a PCRA petition challenging his homicide conviction; (2) a 42 U.S.C. § 1983 civil rights lawsuit against the Philadelphia County district attorney who allegedly withheld the exculpatory evidence; and (3) a federal habeas corpus petition challenging his robbery conviction on grounds unrelated to the exculpatory evidence. He alleged that Defendants violated his First Amendment right to free speech and unlawfully denied his access to courts by destroying this evidence along with his other legal materials. Coulston further claimed

3

that, in finding him guilty of prison misconducts, Defendant Reed violated Coulston's right to due process.[2] In addition, Coulston claimed that Defendant Beard—the Secretary of Pennsylvania's Department of Corrections—was liable for creating and enforcing the unconstitutional policy that led to the destruction of Coulston's legal materials. Several officials and Defendant Beard moved to dismiss the claims against them. The District Court granted the motion. After the close of discovery, the remaining Defendants moved for summary judgment, which the District Court also granted. Coulston appeals.[3]

## II. Access to Courts Claims

We will affirm the dismissal of Coulston's access to courts claims. The Constitution guarantees prisoners a "right of access to the courts." Lewis v. Casey, 518 U.S. 343, 350 (1996) (emphasis omitted). Where, as here, the prisoner asserts that the defendants' actions have inhibited his opportunity to present a past legal claim, he must show (1) he suffered an actual injury—that is, that he lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) he has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial-of-access

---

[2] Coulston's complaint also referenced his Eighth Amendment right to be free from cruel and unusual punishment and his right to equal protection under the laws. The District Court dismissed those claims and Coulston has not challenged their dismissal on appeal. Accordingly, we will not address those decisions here. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005).

[3] We have jurisdiction under 28 U.S.C. § 1291. We review de novo both a district court's dismissal for failure to state a claim and the grant of summary judgment. See Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011). We may affirm on any grounds supported by the record. See Hughes v. Long, 242 F.3d 121, 122 n.1 (3d Cir. 2001).

suit.  Christopher v. Harbury, 536 U.S. 403, 415 (2005); see also Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).

We first examine Coulston's claims that prison officials interfered with his filing a PCRA petition challenging his murder conviction as well as a federal habeas petition challenging his aggravated robbery conviction.  For his lost opportunity to file those challenges, Coulston seeks money damages.  However, under Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), he cannot do so at this time.  Heck holds that a damages remedy that necessarily implies the invalidity of a criminal conviction is impermissible while that conviction stands.  Id.  Coulston cannot demonstrate that the loss of his PCRA claim injured him unless he also demonstrates that his PCRA petition had merit, which necessarily would imply the invalidity of his murder conviction.  See Burd v. Sessler, 702 F.3d 429, 434-35 (7th Cir. 2012) (holding that Heck barred the plaintiff's § 1983 access-to-courts claim seeking money damages for prison officials' interference with his ability to challenge his state court conviction); see also Hoard v. Reddy, 175 F.3d 531, 534 (7th Cir. 1999) ("where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and so he cannot get damages until the conviction is invalidated"); Nance v. Vieregge, 147 F.3d 589, 591-92 (7th Cir. 1998) (same as to motion to withdraw guilty plea).  The same is true for any actual injury arising from the lost opportunity to file his proposed federal habeas petition challenging the aggravated robbery conviction.  Thus, as we have previously recognized, any § 1983 claims cannot accrue until Coulston successfully invalidates the underlying convictions.  See Gibson v. Superintendent of N.J. Dep't of

5

Law & Pub. Safety, 411 F.3d 427, 442 (3d Cir. 2005) ("When a denial of access claim involves a state's suppression of evidence that is material to a criminal trial, the claim does not accrue until the conviction is invalidated."), overruled on other grounds by Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010).

Moreover, the District Court correctly dismissed Coulston's access-to-courts claim predicated on the proposed § 1983 suit against the assistant district attorney who withheld the exculpatory evidence. That predicate claim lacks arguable merit as it too is barred by Heck. See Amaker v. Weiner, 179 F.3d 48, 51 (2d Cir. 1999) (holding that Heck bars a § 1983 suit claiming that constitutional rights have "been denied by the withholding of exculpatory evidence"). In sum, we hold that under the facts of this case, Coulston could not maintain an action for the violation of his constitutional right to access the courts.[4]

---

[4] We stress that the claims denied on Heck grounds are without prejudice. See Fottler v. United States, 73 F.3d 1064, 1065-66 (10th Cir. 1996) (noting that Heck dismissals are without prejudice). We further note that applying the Heck Rule in this context may have unintended implications. Barring § 1983 actions for money damages on access-to-courts claims, particularly when the alleged denial of access to the courts concerns a petition for state collateral review, risks creating a trap for unwary *pro se* litigants. When prisons deny prisoners their constitutional right to court access for state collateral review petitions, they prevent prisoners from challenging the legality of their convictions. If the prisoner attempts to assert his rights through a § 1983 claim but makes the mistake of pleading his claim as one for money damages, applying the Heck rule may insulate the underlying conviction from review despite the prison's potentially unconstitutional conduct.

Prisoners may avoid this outcome by using other avenues to challenge the denial of access to the courts and to revive challenges to their convictions. In order to ensure access to the courts, prisoners may file a claim for injunctive relief against the prison pursuant to § 1983. Hoard v. Reddy, 175 F.3d 531, 533 (7th Cir. 1999). They may also ask state and federal courts to extend the time for filing *habeas corpus* petitions as a result of the denial of access to the courts. In Pennsylvania, the time limit for filing a PCRA petition may be extended when "the failure to raise the claim previously was the

### III. Remaining Claims

We will also affirm the dismissal of Coulston's claim that Defendant Beard was liable for creating and enforcing a facially unconstitutional policy, DC-ADM 815. Under § 1983, supervisors can be held liable in this context if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (internal quotation marks, alteration omitted). Coulston has pleaded no such facts and his conclusory legal allegations that Beard is liable for "creating and enforcing an [unconstitutional] policy" do not suffice to state a claim. See Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Moreover, the District Court properly dismissed Coulston's claim that his legal materials were confiscated without due process. Because Coulston had an adequate post-deprivation state remedy, the deprivation of his property does not violate due process. Hudson v. Palmer, 468 U.S. 517, 533 (1984). Indeed, Coulston challenged the seizure of his property through the prison's administrative grievance process, see Tillman v.

---

result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States." 42 Pa. C.S.A. § 9545(b)(1)(i). If the prisoner has already exhausted the state collateral review process, denial of access to the courts may extend the time as well for filing a federal *habeas corpus* petition pursuant to 28 U.S.C. § 2254. See Butler v. Walsh, 846 F. Supp. 2d 324, 331 (E.D. Pa. 2012). *Heck* is thus an obstacle, but not an insurmountable one, to obtaining review of a conviction when a prisoner is denied access to the courts.

<u>Lebanon County Corr. Facility</u>, 221 F.3d 410, 422 (3d Cir. 2000), and in appealing his misconduct citations.

Finally, to the extent that Coulston's complaint asserted that Defendants' actions violated his free speech rights, his complaint contains nothing more than vague and conclusory allegations. <u>Twombly</u>, 550 U.S. at 555. Accordingly, we conclude that the District Court correctly dismissed that claim.

IV. Conclusion

For these reasons, we will affirm the District Court's judgment in favor of Defendants.