In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2649

BENYEHUDAH WHITFIELD II,

*Plaintiff-Appellant,*

*v.*

ERIKA R. HOWARD, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:13-cv-03192 — **Richard Mills**, *Judge.*

ARGUED OCTOBER 27, 2016 — DECIDED MARCH 28, 2017

Before WOOD, *Chief Judge*, and BAUER and MANION, *Circuit Judges*.

WOOD, *Chief Judge*. Benyehudah Whitfield spent nearly 17 years in the custody of the Illinois Department of Corrections. He contends that he would have been released earlier had it not been for the retaliatory revocation of good-time credits; he lost those credits in three prison disciplinary proceedings. Whitfield filed a 42 U.S.C. § 1983 suit after his release in 2011,

alleging that his constitutional rights were violated by his im-
properly postponed release. The district court granted sum-
mary judgment for the defendants, reasoning that Whitfield's
claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994),
*Edwards v. Balisok*, 520 U.S. 641 (1997), and *Burd v. Sessler*, 702
F.3d 429 (7th Cir. 2012). We conclude, to the contrary, that
those cases do not bar his action, and so we reverse and re-
mand for further proceedings.

**I**

The three prison disciplinary proceedings against Whit-
field at issue here took place in 2002, 2003, and 2007. Com-
bined, they resulted in the revocation of a total of 16 months
of good-conduct credit Whitfield had earned. While incarcer-
ated, Whitfield diligently filed administrative grievances re-
garding all three disciplinary reports and actions; the Admin-
istrative Review Board denied each one. In January 2003 and
June 2004, Whitfield also filed separate section 1983 actions
challenging the 2002 and 2003 disciplinary proceedings, each
of which included a claim of retaliation in violation of the First
Amendment. The district courts dismissed the First Amend-
ment retaliation claims in both of those actions as barred by
*Heck*. Such a dismissal is without prejudice. See *Moore v. Burge,*
771 F.3d 444, 446 (7th Cir. 2014) (if barred by *Heck*, plaintiff
sued too early, not too late, because statute of limitations does
not begin to run until *Heck* bar lifted); *Polzin v. Gage,* 636 F.3d
834, 839 (7th Cir. 2011) ("If the district court decides that dis-
missal on the *Heck* doctrine alone is appropriate, it should dis-
miss that part of [plaintiff's] complaint without prejudice.").

Whitfield also embarked on a spirited, if procedurally
flawed, effort to vindicate his rights in state court. In March

2004, he filed a complaint for mandamus relief in the Livingston County (Illinois) circuit court alleging due process violations in the 2003 disciplinary proceeding. The circuit court denied the claim and held that Whitfield had received whatever process was due. He appealed that denial, but the state appellate court affirmed. Whitfield did not petition for leave to appeal that decision to the Illinois Supreme Court.

In August 2009 Whitfield attempted to challenge all three revocations of his good-conduct credit through a state-law petition for habeas corpus filed in the Randolph County circuit court. The circuit court dismissed the complaint without prejudice, because under Illinois law it failed to state a cognizable theory. Whitfield moved for reconsideration and argued that the court should recharacterize his complaint as one seeking mandamus, but the court refused to do so. Whitfield appealed, but he failed to include a copy of the record (because he did not have one). Claiming indigence, he requested a free record on appeal, but the court denied his motion because state law conferred no right to a free record in a civil action. He moved for and was granted two extensions of time to file the record. Although he still did not have the official record, he sought leave to file his personal documents as the record. The court rejected that motion and dismissed the appeal in June 2010 for want of prosecution (meaning only for lack of a record). Whitfield petitioned the Illinois Supreme Court for leave to appeal, but it denied his petition in September 2010.

On March 2, 2011, Whitfield filed a federal petition for habeas corpus, in which he again tried to challenge the three disciplinary actions. The state argued that Whitfield's petition would be rendered moot in July 2011, when he was scheduled for release, and that Whitfield had failed to exhaust his state

remedies. The district court dismissed the action as moot on July 25, 2011, because by that time Whitfield was no longer in custody.

This string of failures did not stop Whitfield, who filed the present section 1983 action just short of two years later, on July 8, 2013. Upon a preliminary review pursuant to 28 U.S.C. § 1915(e), the district court found that Whitfield stated claims against the adjustment committee members for due process violations and for retaliation in violation of the First Amendment. Nonetheless, it granted summary judgment for the defendants on the basis that Whitfield's suit was barred by *Heck* and *Balisok*, as interpreted in *Burd v. Sessler*. The latter case requires a plaintiff to pursue timely collateral relief while in custody, and the district court concluded that Whitfield had not done so. Whitfield moved for reconsideration twice; the district court denied both requests. This appeal followed.

## II

Pointing to a procedural hiccup surrounding Whitfield's motions for reconsideration and notices of appeal, the state begins with a challenge to our appellate jurisdiction. That argument takes precedence, and so we address it first.

The district court issued its order granting summary judgment for the defendants on January 7, 2015. Relying on Federal Rule of Civil Procedure 59, Whitfield filed a timely motion for reconsideration of that order on January 21, 2015; the district court denied that motion on June 5, 2015. Complicating matters, Whitfield filed a second motion for reconsideration that purported to rely on both Rule 59 and Rule 60(b) on June 29, 2015. The district court denied that motion on July 8, 2015, and properly advised Whitfield that the June 29 motion

had not reset the clock on his time to appeal from the January 7 order. Whitfield first responded with a notice of appeal limited to the July 8 order; he filed that notice on July 22, 2015. This notice of appeal was untimely in relation to the January 7 and June 5 orders, but it was timely for the July 8 order (construing it as a denial of relief under Rule 60(b)).

But Whitfield was not finished. On August 4, 2015, he filed a motion pursuant to Federal Rule of Appellate Procedure 4(a)(5) for an extension of time to file a notice of appeal of the judgment and filed an amended notice of appeal that included the January 7, June 5, and July 8 orders. That rule permits the district court to extend the time to file a notice of appeal if "a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires." FED. R. APP. P. 4(a)(5)(A)(i). The time prescribed by Rule 4(a) for Whitfield would have been 30 days, see FED. R. APP. P. 4(a)(1)(A), had he not filed a timely Rule 59 motion for reconsideration. But he did file such a motion within the permitted 28 days, see FED. R. CIV. P. 59(b), and that is one of the motions that extends the time for filing an appeal until the entry of the order disposing of the motion. See FED. R. APP. P. 4(a)(4)(A)(iv). The district court denied Whitfield's original Rule 59 motion on June 5, 2015. At that point, he had 30 days to file a timely notice of appeal, or until July 5, 2015. Rule 4(a)(5)(A)(i) then gave him an extra 30-day period in which to file a motion for an extension of time for filing his notice of appeal. That takes us to August 4, 2015, exactly—the date when Whitfield filed his motion to extend and his notice of appeal from all of the district court's orders.

The district court found excusable neglect in Whitfield's failure to file a timely appeal of the original judgment, as required by Rule 4(a)(5)(A)(ii), and granted him an extension to file the amended notice of appeal. In so doing, it did not abuse its discretion or otherwise act unreasonably. The appellees neither objected to the August 4 motion to extend the time for appeal nor did they cross-appeal from the grant of that order. *Cf. Sherman v. Quinn*, 668 F.3d 421 (7th Cir. 2012) (consolidating plaintiff's appeal and defendant's cross-appeal of order granting motion for time to extend appeal). Their silence can be taken into account for purposes of the prejudice inquiry, even though it cannot waive a fundamental jurisdictional defect (assuming for the sake of argument that this is the proper way to look at the provisions in the rule for extensions of time). See *Bowles v. Russell*, 551 U.S. 205 (2007) (time for appeal in civil cases is jurisdictional); see also *Netzer v. Office of Lawyer Regulation*, Nos. 16-3236 & 16-3713, 2017 WL 961740 (7th Cir. Mar. 13, 2017) (questioning whether FED. R. APP. P. 4(a)(5)(C) sets a jurisdictional time limit but finding no need to resolve the issue).

When a district court is considering whether excusable neglect exists, it should take into account such factors as "the danger of prejudice [to the non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The district court here did just that. It found that the delay was short, and it saw no reason to question Whitfield's good faith. It understood how Whitfield, as a *pro se* litigant, could have misunderstood the operation of Rule 4(a)(4), and it noted that when the court informed him of

the correct reading of the rule, he acted promptly in filing his motion to extend.

This was a reasonable response to the situation. The federal rules are complex, and the court may find excusable neglect in a *pro se* litigant's confusion about how they work. See *McCarty v. Astrue*, 528 F.3d 541, 544 (7th Cir. 2008). With the extension, Whitfield's August 4 notice of appeal was timely, and it sufficed to bring the full case before us. We therefore deny the state's motion to dismiss for want of appellate jurisdiction.

**III**

We are now ready to turn to the heart of the appeal. We review a grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Janusz v. City of Chicago*, 832 F.3d 770, 774 (7th Cir. 2016). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We are free to affirm a grant of summary judgment on any basis supported by the record. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016).

Although Whitfield, still proceeding *pro se* (though supported by *amici*, whose help we gratefully acknowledge), challenges the district court's decision on a number of grounds, we can disregard most of them. The key question relates to the way in which *Heck* applies to Whitfield's situation. We reject Whitfield's effort to argue that the state waived its *Heck* defense by asserting in its motion for summary judgment that Whitfield's claims were barred by *res judicata*. Our

own review of the record satisfies us that the defendants preserved their *Heck* defense in the motion for summary judgment. Moreover, *Heck* formed the basis of the district court's decision and has been fully briefed on appeal.

In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court considered the potential overlap between suits brought under 42 U.S.C. § 1983 and those relying on the habeas corpus statute governing state prisoners, 28 U.S.C. § 2254. In *Heck*, the Court characterized *Preiser* as holding "that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement *and seeks immediate or speedier release*, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481 (emphasis added). The section 1983 plaintiffs in *Preiser* had challenged the administrative revocation of their good-conduct credits. The Court, emphasizing Congress's intent to make habeas corpus the exclusive remedy for someone seeking a ruling from the courts that he should be released sooner, held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser*, 411 U.S. at 500.

*Heck* extended this rule to section 1983 suits that did not directly seek immediate or speedier release, but rather sought monetary damages that would call into question the validity of a conviction or term of confinement. 512 U.S. at 486–87. The Court held that a prisoner has no claim under section 1983 until he receives a favorable decision on his underlying conviction or sentence, such as through a reversal

or grant of habeas corpus relief. *Id.* In *Balisok* the Court extended this bar to section 1983 suits brought by prisoners who wanted to challenge the outcome of prison disciplinary proceedings in which the plaintiff sought money damages rather than release. The concern the Court identified was similar to the one involved in *Heck*: if the plaintiff established a *procedural* defect in his administrative proceedings, it would imply the invalidity of the deprivation of his good-time credits. 520 U.S. at 646. This in turn would imply that he was entitled to an earlier release, relief for which a grant of habeas corpus is the exclusive remedy. See *Preiser*, 411 U.S. at 500.

In *Wilkinson v. Dotson*, the Court considered another variation on this theme: a challenge under section 1983 to the procedures used in a prison parole hearing, after parole boards rejected the requests of two state prisoners. 544 U.S. 74 (2005). The section 1983 suits were *not* barred there because they did not fall within the "implicit habeas exception." *Id.* at 82. The prisoner-plaintiffs' claims would have invalidated the state *procedures* used to deny parole eligibility and suitability, but would not have necessarily meant that their confinement was invalid or that they were entitled to either immediate release or a shorter term. *Id.* A new hearing that was untainted by the procedural flaws might just as easily result in the same substantive decision as a different one. Similarly, in *Skinner v. Switzer*, the Court held that a prisoner's post-conviction claim for DNA testing could be pursued in a section 1983 action, because success in the suit would not necessarily invalidate the lawfulness of the confinement. 562 U.S. 521, 525 (2011).

The Supreme Court has not yet had occasion to speak directly to the applicability of *Heck* when a plaintiff is no longer

in custody and thus is jurisdictionally barred from using ha-
beas corpus. See, *e.g.*, *Maleng v. Cook*, 490 U.S. 488, 490 (1989);
*Stanbridge v. Scott*, 791 F.3d 715, 718 (7th Cir. 2015). We did,
however, address one such situation in *Burd v. Sessler*. In *Burd*,
the plaintiff waited until he had been released from prison
and had completed his parole, and only then brought a sec-
tion 1983 action alleging that prison officials had denied him
his right of access to the courts, without which he was unable
to withdraw his guilty plea or to appeal. 702 F.3d 429. We de-
cided that "*Heck* applies where a § 1983 plaintiff *could* have
sought collateral relief at an earlier time but declined the op-
portunity and waited until collateral relief became unavaila-
ble before suing." *Id.* at 436. We worried that it would under-
mine *Heck*—and worse, the fundamental line between habeas
corpus and civil rights actions dating back to *Preiser*—to allow
a plaintiff who had not been precluded by some sort of legal
impediment to skirt the *Heck* bar by waiting to bring his sec-
tion 1983 action until habeas corpus was no longer available.
*Id.* We therefore held that "*Heck* bars a § 1983 action where: (1)
favorable judgment would necessarily call into question the
validity of the underlying conviction or sentence and (2) the
plaintiff could have pursued collateral relief but failed to do
so in a timely manner." *Id.*

There are a number of significant differences between
*Burd* and the present case. First, the plaintiff in *Burd* sought *no*
collateral relief—either in a timely manner, as contemplated
by the prison's rules, or otherwise—before filing his section
1983 action after his release from custody. Whitfield, in con-
trast, has attempted to follow through on every remedy and
more as he has tried to address what he sees as the retaliatory
motive behind the revocation of his good-time credits. Thus,
to the extent that diligence is needed, Burd failed the test and

Whitfield passes. The key point for this purpose is that some-
one such as Burd who bypasses an opportunity for collateral
review cannot take advantage of the portion of *Heck* that post-
pones a claim's accrual until release. Second, the type of relief
that Burd sought was inherently not capable of being ad-
dressed by damages, as long as the underlying conviction
stood. Burd was complaining about his lack of access to the
law library and to the courts. The underlying claim for which
he sought access to the courts was an opportunity to with-
draw his guilty plea. *Heck*, we held, forbids such an action
"until the plaintiff can demonstrate his injury by establishing
the invalidity of the underlying *judgment*." *Id*. at 435. Whit-
field, in contrast, is seeking relief on the ground that he was
kept in prison for too long.

The case that governs most directly is therefore not *Heck*,
but *Balisok*. There, the petitioner was challenging the proce-
dures used in the prison disciplinary hearing that resulted in
his loss of good-time credits. Had he prevailed, the result of
the disciplinary proceeding would have to have been set
aside. Whitfield, in contrast, is arguing that the hearings
should never have taken place at all, because they were acts
of retaliation for his exercise of rights protected by the First
Amendment. He has no quarrel with the procedures used in
the prison disciplinary system. He could just as well be saying
that a prison official maliciously calculated an improper re-
lease date, or "lost" the order authorizing his release in retal-
iation for protected activity. In short, the essence of Whitfield's
complaint is the link between retaliation and his delayed re-
lease; the fact that disciplinary proceedings were the mecha-
nism is not essential. *Balisok* also took care to be precise, when

it held that the petitioner's claim for prospective injunctive re-
lief could go forward under section 1983, since it did not nec-
essarily imply anything about the loss of good-time credits.

We therefore do not think that *Burd* provides the answer
to the question now before us: whether a plaintiff who (1) did
seek collateral relief of an administrative determination in a
timely manner, while in custody, but was told to wait (recall
that the district court's dismissal was for mootness because of
his release), (2) is *not* making a procedural challenge to the
prison disciplinary hearings, and (3) never had his day in
court prior to his release, is entitled to adjudicate his case un-
der the only statute left: section 1983?

We addressed a similar situation in *Carr v. O'Leary*, 167
F.3d 1124 (7th Cir. 1999). There, the plaintiff-inmate filed a sec-
tion 1983 action alleging due process flaws in the prison dis-
ciplinary system that led to the revocation of his good-time
credits. He had brought his suit prior to the Supreme Court's
decisions in *Heck* and *Balisok*. After this court held that *Heck*
applied to prison disciplinary proceedings in *Miller v. Ind.
Dep't. of Corr.*, 75 F.3d 330 (7th Cir. 1996)—a holding confirmed
the next year by the Supreme Court in *Balisok*—the defend-
ants raised the *Heck* defense, and the district court held that
the suit was barred. We ultimately remanded on a waiver is-
sue, but suggested in dicta that *Heck* likely would not have
barred the suit because the plaintiff had been released from
custody and could therefore not maintain a habeas corpus ac-
tion. See *Carr*, 167 F.3d at 1127.

The district court here criticized Whitfield for "ignor[ing]
his chance to pursue collateral relief while in prison by not
exhausting his state court remedies." It thought that allowing
the suit to proceed would allow a plaintiff such as Whitfield

to skirt the *Heck* bar by waiting to file a habeas corpus action until shortly before release, and thereby avoid a state-court ruling on the merits.

This fails, however, to give Whitfield credit for the timely actions he did take. This is not a case in which the prisoner filed something long after the events in question, at the last minute before his release, and then urges that the *Heck* bar should be lifted after he is out of custody. Moreover, the district court's logic is at odds with the Supreme Court's admonition in *Balisok* against engrafting a nonstatutory exhaustion requirement: "We reemphasize that § 1983 contains no judicially imposed exhaustion requirement; absent some other bar to the suit, a claim is either cognizable under § 1983 and should immediately go forward, or it is not cognizable and should be dismissed." 520 U.S. at 649. *Heck* makes much the same point: " … *Preiser* did not create an exception to the 'no exhaustion' rule of § 1983; it merely held that certain claims by state prisoners are not cognizable under the provision, and must be brought in habeas corpus proceedings, which do contain an exhaustion requirement." 512 U.S. at 481.

By requiring a plaintiff who is released from custody to have exhausted all imaginable collateral options *before* walking out the prison door, the district court ran afoul of this guidance. If *Heck* is as strict a bar to suit as the district court implied, then there is no reason why the *Balisok* Court would have preserved the suit for prospective injunctive relief: virtually everything would have been precluded unless or until full exoneration occurred. And, as we have said, there are important factual distinctions between Whitfield's case and *Burd*.

We worried in *Burd* about situations in which a plaintiff has a constitutional claim, yet (perhaps for strategic reasons) sits it out while in custody and waits to bring her claim until habeas corpus is jurisdictionally barred because the "custody" requirement is no longer met. See 702 F.3d at 436. Allowing section 1983 suits by plaintiffs who sleep on their rights would undermine our interest in promoting federal-state comity: "the States have an important interest in not being bypassed in the correction of [their court and prison administration] errors." *Preiser*, 411 U.S. at 492. But there is a subtle but important difference between requiring a plaintiff to pursue appropriate relief in a timely manner (that is, while she is in custody and able to do so), and a requirement that she *exhaust* all collateral relief. Although Whitfield may not have pursued all of his collateral relief options in a procedurally perfect manner, he is hardly in the position of having bypassed the state options entirely or leaving them until the eve of his release. (We pass no judgment on whether any of the state court decisions would have *res judicata* effect in Whitfield's section 1983 suit. This, as well as any other issues we do not reach, are open for development on remand.) Whitfield did his best to obtain relief in a timely way while he was in custody, and *Burd* requires no more.

We understand that the district court may have been concerned about the incentives an inmate might have to try to file strategically in order to skirt the strict habeas corpus requirements. But there are a number of tools that combine to block such efforts at manipulating the system. A challenge that would undermine a state-court conviction or sentence would still face *Rooker-Feldman* jurisdictional problems or *res judicata* issues in a lower federal court. Suits that challenged condi-

tions of confinement might run into statute of limitations is-
sues, as they could have been brought as section 1983 actions
while the person was in custody. And prisoners already have
the strongest possible incentive to ensure that they do not re-
main behind bars a day longer than necessary, whether be-
cause of the way their sentences are calculated, or because of
the award or removal of good-time credits, or any other factor.
There is little to no incentive to postpone such a critical ques-
tion until after the harm of over-long incarceration has oc-
curred. That, too, is unlike the library- and court-access claim
involved in *Burd*, where the plaintiff lost little by waiting until
his release to see what litigation might bring. See *Nonnette v.
Small*, 316 F.3d 872, 878 n.7 (9th Cir. 2002).

We therefore find that Whitfield's claims are not barred by
*Heck* or *Balisok*, and REVERSE and REMAND to the district court
for further proceedings consistent with this opinion.