In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3502

NEAL R. VERFUERTH,

*Plaintiff-Appellant,*

*v.*

ORION ENERGY SYSTEMS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 14-C-352 — **William C. Griesbach**, *Chief Judge*.

ARGUED SEPTEMBER 27, 2017 — DECIDED JANUARY 11, 2018

Before WOOD, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.

WOOD, *Chief Judge*. Neal Verfuerth is the founder and former CEO of Orion Energy Systems, a company that specializes in energy-efficient lighting. Orion fired Verfuerth in November 2012, following several disputes between Verfuerth and Orion's board of directors. These disputes involved a patchwork of issues, including the billing practices of outside counsel, the conduct of Orion's board of directors,

and a defamation suit filed by one of Orion's former employees. Shortly after his departure from the company, Verfuerth brought this lawsuit. He argues that his complaints to the board about the board's own managerial decisions amounted to "whistleblowing" and that, by firing him, Orion violated federal whistleblower-protection laws. The district court resolved the case with a grant of summary judgment in Orion's favor. Verfuerth appealed and now seeks to convince us that the district court was wrong.

## I

Verfuerth founded Orion in 1996 and took the company public in 2007. His tenure as CEO appears to have gone smoothly until sometime in 2012. At the beginning of that year, Verfuerth announced that he was divorcing his wife. The divorce promised to be costly, and so Verfuerth had to find a way to pay for it. One option would have been to sell some of his shares of Orion stock, but Orion's investors might have taken a dim view of that action. To avert any such response, the board agreed to reimburse Verfuerth's out-of-pocket divorce expenses and attorney's fees.

Shortly thereafter, several managerial disagreements arose between Verfuerth and various members of Orion's board of directors. As Verfuerth tells it, he raised concerns about a hodgepodge of matters, including: (1) overbilling by outside counsel; (2) a potential patent infringement by one of Orion's products; (3) potential conflicts of interests involving a member of the board and a company executive; (4) miscellaneous violations of internal company policy, such as consumption of alcohol at an "informal [board] meeting;" (5) the board's handling of a defamation suit brought by a former employee who had been accused of stock manipulation; and

(6) the fact that the chairman of Orion's audit committee allowed his CPA license to expire.

The district court's opinion explains the facts behind each of these grievances in detail. See *Verfuerth v. Orion Energy Sys.*, No. 14-C-352, 2016 WL 4507317 (E.D. Wis. Aug. 25, 2016). Taking all facts and inferences in Verfuerth's favor, as we must, it is enough to say that Verfuerth complained about these issues multiple times between May and August 2012. Verfuerth also advised the board to disclose these issues to Orion's shareholders. The board ignored this advice, and Verfuerth himself never mentioned these issues in any of the quarterly or annual reports he filed on Orion's behalf with the Securities and Exchange Commission.

Other differences of opinion between Verfuerth and the board exacerbated these conflicts. For example, Verfuerth and certain directors argued about communication techniques, sales tactics, and product innovation. In addition, around late September 2012, the board began to investigate Verfuerth's divorce-expense reimbursements. By that time, Orion had reimbursed Verfuerth for more than $170,000 in attorney's fees (along with a six-figure tax gross-up), but the board discovered that Verfuerth had paid only about two thirds of this sum to his divorce lawyer. Verfuerth's explanation is that he had withheld the remaining $60,000 from his lawyer because of a fee dispute. Nonetheless, he failed to return this money to Orion or otherwise to account for it.

On September 27, the board of directors held a special advisory meeting during which it removed Verfuerth as CEO and reassigned him to the advisory position of "chairman emeritus." Emails exchanged by board members prior to Ver-

fuerth's demotion cite several reasons for the board's decision, including falling stock prices, Verfuerth's "intimidating" leadership style, high rates of "senior management turnover," and a litany of business-strategy disagreements.

As a precondition for receiving emeritus status, Verfuerth was required to take a six-month sabbatical. The board sent Verfuerth a "Board Directives Letter" instructing him that during the sabbatical he was not to communicate with Orion employees about company business. The stated purpose of this restriction was to prevent Verfuerth from undermining Orion's new CEO, John Scribante.

Verfuerth was not pleased with the terms the board wanted to impose on him, and so on October 19, he informed the board of his intention to resign. That notice triggered immediate negotiations between Orion and Verfuerth about Verfuerth's severance package. These negotiations—which featured disputes over the unpaid attorney's fees and a severance package for Verfuerth's new fiancée (also an Orion employee)—were unsuccessful. On November 6, the chairman of Orion's board sent a letter to all members (including Verfuerth) notifying them of a special meeting to consider terminating Verfuerth's employment for incurable cause. The meeting was scheduled for November 8 at 8:00 a.m.

Less than an hour before this meeting, at 7:17 a.m., Verfuerth sent an email to the board in which he reiterated his many complaints about the board's managerial decisions and alleged that his impending termination was the result of a conspiracy against him. Although Verfuerth characterized this email as a "complaint … pursuant to Orion Energy Systems Inc Whistle Blower Policy, as well as the Sarbanes Oxley Act," the email did not include any reference to any complaint

filed with the SEC (or any other government agency), nor did it provide the board with any new information. Instead, Verfuerth's email simply rehashed the numerous personal and professional grievances about which he had been complaining over the course of the past year.

At the November 8 board meeting, the directors unanimously voted to dismiss Verfuerth for cause. In its termination letter, the board explained that it was taking this step because of, among other reasons, Verfuerth's "misappropriation and conversion of Company funds" in connection with his divorce attorney's fee reimbursements, and his "serial violations of the terms and conditions of [the] September 27, 2012 Board Directives Letter," including "[d]isparagement of [new CEO] John Scribante" and "attempt[ing] to form a dissident shareholder group."

A year and a half later, Verfuerth brought this lawsuit. He alleged fourteen violations arising out of his termination, twelve of which were state-law actions for tort or breach of contract. Our central concern is with his two federal whistleblower-protection theories, one under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A(a), and another derivative claim under the Dodd-Frank Act, 15 U.S.C. § 78u-6. The district court dismissed several of Verfuerth's state-law counts for failure to state a claim and rejected the remainder on summary judgment. It also granted summary judgment to Orion on both whistleblower-protection theories, which are the only matters at issue in this appeal. We turn to them now.

## II

The Sarbanes-Oxley Act of 2002 forbids publicly traded companies, of which Orion is one, from retaliating against an

employee for "any lawful act done by the employee … to provide information … regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders," when the information or assistance is provided to a government agency or to a person with supervisory authority. 18 U.S.C. § 1514A(a).

To succeed on a Sarbanes-Oxley claim, a plaintiff must prove that he engaged in protected whistleblowing, that his employer knew he engaged in protected whistleblowing, and that his whistleblowing was a contributing factor in some unfavorable action taken by the employer against the employee. *Harp v. Charter Communications, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009). Once an employee has established these elements, the burden of proof shifts to the employer, who must show by clear and convincing evidence "that it would have taken the same unfavorable personnel action in the absence of that protected behavior." *Id*. (quotation and alteration marks omitted). Whistleblowing is protected by Sarbanes-Oxley only if the employee subjectively believed fraud was occurring *and* was objectively reasonable in holding that belief. *Id*. Because this case comes to us on summary judgment, we consider Verfuerth's Sarbanes-Oxley claim *de novo*, treating his factual assertions as true and drawing all reasonable inferences in his favor. *Whitfield v. Howard*, 852 F.3d 656, 661 (7th Cir. 2017).

The Dodd-Frank Act also protects whistleblowers, but its scope is (arguably) narrower than that of the Sarbanes-Oxley Act. Whereas Sarbanes-Oxley defines a whistleblower as

someone who provides information to any federal regulatory or law enforcement agency or to a person with supervisory authority over the employee, the Dodd-Frank Act defines a whistleblower as an "individual who provides … information relating to a violation of the securities laws to the *[Securities and Exchange] Commission* … ." 15 U.S.C. § 78u-6(a)(6) (emphasis added). Verfuerth argues that, despite this restrictive definition, the Dodd-Frank Act also protects those who make disclosures protected by Sarbanes-Oxley, even if they do not report the violation to the SEC. This argument is the subject of a circuit split on which the Supreme Court has granted certiorari. See *Somers v. Digital Realty Trust*, 850 F.3d 1045 (9th Cir.), *cert. granted*, 137 S. Ct. 2300 (2017). But we need not take a side in this split, or await the Court's decision in *Somers*, because Verfuerth's Dodd-Frank theory is entirely derivative of his Sarbanes-Oxley theory and, as we explain below, the Sarbanes-Oxley Act does not protect Verfuerth's conduct. Hence, Verfuerth cannot succeed on his Dodd-Frank claim no matter how the Supreme Court rules in *Somers*.

## III

The Sarbanes-Oxley Act protects employees who reveal evidence of certain types of fraud, such as securities fraud or wire fraud. The problem for Verfuerth is that the practices about which he complained—attorney overbilling, intellectual property disputes, conflicts of interest, and violations of internal company protocol—are not "fraud" within the meaning of the statute. Verfuerth attempts to cure this obvious defect by artfully recharacterizing his disputes with the board. According to Verfuerth, he was not simply complaining about the board's managerial decisions, but rather was (implicitly)

telling board members that their failure to disclose his grievances to Orion's shareholders amounted to securities fraud.

This theory stretches the language and purpose of Sarbanes-Oxley beyond what the statute can bear. An executive who advises board members to disclose a fact that the board already knows about has not "provide[d] information" about fraud. At most, he has provided an opinion. Nothing in Sarbanes-Oxley, or any other federal statute, prevents a company from firing its executives over differences of opinion.

Verfuerth could have qualified as a whistleblower if, for example, he informed the SEC that Orion's past filings contained material omissions, and if he were objectively reasonable in thinking that those omissions were material. But a person does not become a whistleblower just by advising his colleagues about their own disclosure obligations and then doing nothing when they fail to follow his advice. *Cf. Smets v. Merit Sys. Prot. Bd.*, 426 F. App'x 890, 892 (Fed. Cir. 2011) ("Criticism directed to the wrongdoers themselves is not normally viewable as whistleblowing," because "the employee is not making a 'disclosure' of misconduct.") (internal quotation marks omitted).

Perhaps recognizing that his theory of liability rests on feet of clay, Verfuerth next asserts that he "attempted" to file an online complaint with the SEC shortly before Orion fired him. The SEC never received any such complaint, nor does Verfuerth have any record of having sent it. In any case, Sarbanes-Oxley would protect Verfuerth only if his SEC complaint were the reason Orion fired him, and Verfuerth has not produced any evidence that anyone at Orion knew—or even could have known—about his alleged attempted report to the SEC.

Verfuerth's theory of liability suffers from numerous additional flaws. Most obviously, it overlooks the fact that Verfuerth himself, as Orion's CEO during the relevant period, bore ultimate responsibility for disclosing material information to the SEC. Thus, if Orion's failure to disclose the complained-of conduct to its shareholders amounted to securities fraud, then Verfuerth participated in that fraud when he knowingly filed SEC reports in June and August of 2012 that made no mention of these issues. (These reports—along with affidavits that Verfuerth signed in 2013 in connection with the release of his personal stocks—all required Verfuerth to certify in writing that he was not aware of any material undisclosed facts that could affect the value of Orion's stock.) Sarbanes-Oxley does not prohibit a company from firing an employee who confesses *his own* fraudulent conduct.

In addition, Verfuerth has not even attempted to prove that the conduct he complained about was so significant that its nondisclosure could constitute securities or shareholder fraud. The securities laws do not require companies to notify shareholders about every managerial hiccup or internal policy disagreement, and it is far from obvious that the conduct of concern to Verfuerth comes anywhere near the level of materiality needed to support a plausible claim of fraud. See *Day v. Staples, Inc.*, 555 F.3d 42, 55–56 (1st Cir. 2009) ("To have an objectively reasonable belief there has been shareholder fraud, the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud … includ[ing] material misrepresentation or omission, scienter, [shareholder] loss, and [causation].") (internal quotation marks omitted).

**IV**

Adopting Verfuerth's interpretation of Sarbanes-Oxley would mean that any otherwise-at-will employee who gives his boss advice about a security disclosure is a "whistle-blower" entitled to the vast protections of federal law. Neither the text nor the legislative history of the statute supports such an extraordinary result. Nor does anything in Dodd-Frank salvage what is otherwise a meritless case. Accordingly, we AFFIRM the judgment of the district court.