In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3543

JOHNNIE LEE SAVORY,

*Plaintiff-Appellant*,

*v.*

WILLIAM CANNON, SR., as special
representative for Charles Cannon,
*et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-00204 — **Gary Feinerman**, *Judge*.

ARGUED OCTOBER 25, 2018 — DECIDED JANUARY 7, 2019

Before ROVNER, HAMILTON, and BARRETT, *Circuit Judges*.

ROVNER, *Circuit Judge*. Johnnie Lee Savory spent thirty years
in prison for a 1977 double murder that he insists he did not
commit. Even after his release from prison, he continued to
assert his innocence. Thirty-eight years after his conviction, the

governor of Illinois pardoned Savory. Nearly two years after the pardon, Savory filed a civil rights suit against the City of Peoria ("City") and a number of Peoria police officers alleging that they framed him. The district court dismissed the suit as untimely. We reverse and remand for further proceedings.

## I.

In January 1977, Peoria police officers arrested fourteen-year-old Savory for the rape and murder of nineteen-year-old Connie Cooper and the murder of her fourteen-year-old brother, James Robinson. According to Savory's complaint, which we must credit when assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), these officers subjected Savory to an abusive thirty-one hour interrogation over a two-day period. *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018) (in reviewing a district court's decision on a motion to dismiss pursuant to Rule 12(b)(6), we accept as true all well-pleaded facts and draw all reasonable inferences in favor of the non-moving party). The officers fabricated evidence, wrongfully coerced a false confession from the teen, suppressed and destroyed evidence that would have exonerated him, fabricated incriminating statements from alleged witnesses, and ignored ample evidence pointing to other suspects. No legitimate evidence implicated Savory. His arrest, prosecution and conviction were based entirely on the officers' fabricated evidence and illegally extracted false confession.

Savory was tried as an adult in 1977 and convicted of first degree murder. After that conviction was overturned on appeal, he was convicted again in 1981. He was sentenced to a term of forty to eighty years in prison. After Savory exhausted

direct appeals and post-conviction remedies in state court, he unsuccessfully sought federal habeas corpus relief. He repeatedly petitioned for clemency and also sought DNA testing. After thirty years in prison, he was paroled in December 2006. Five years later, in December 2011, the governor of Illinois commuted the remainder of Savory's sentence. That action terminated his parole (and therefore his custody) but left his conviction intact. On January 12, 2015, the governor issued a pardon that "acquitted and discharged" Savory's conviction. On January 11, 2017, less than two years after the pardon, Savory filed suit against the City and the police officers.

That suit asserted six claims under 42 U.S.C. § 1983, five against the individual defendants and one against the City. The five counts against the individual defendants alleged that they: (1) coerced a false confession from Savory in violation of the Fifth and Fourteenth Amendments; (2) coerced a false confession from Savory in violation of his due process rights under the Fourteenth Amendment; (3) maliciously prosecuted Savory, depriving him of liberty without probable cause in violation of the Fourth and Fourteenth Amendments; (4) violated his right to be free of involuntary confinement and servitude under the Thirteenth and Fourteenth Amendments; and (5) failed to intervene as their fellow officers violated Savory's civil rights. In the sixth count, Savory alleged that the City's unlawful policies, practices and customs led to his wrongful conviction and imprisonment in violation of section 1983. Savory also brought state law claims against the defendants but later conceded that those claims were untimely under the state's one-year statute of limitations. Those claims are not part of this appeal.

The defendants moved to dismiss Savory's section 1983 claims on several grounds but the district court addressed only one: the statute of limitations. The court recognized that, under *Heck v. Humphrey*, 512 U.S. 477 (1994), Savory could not bring his section 1983 claims unless and until he obtained a favorable termination of a challenge to his conviction. The parties agreed that the relevant statute of limitations required Savory to bring his claims within two years of accrual but the parties disagreed on when the *Heck* bar lifted. Savory asserted that his claims did not accrue until he received a pardon from the Illinois governor on January 12, 2015, which would make his January 11, 2017 suit timely. The defendants asserted that the *Heck* bar lifted when Savory's parole was terminated on December 6, 2011, making his claims untimely. The district court concluded that the defendants had the better view of *Heck* and dismissed the claims with prejudice. Savory appeals.

## II.

We review *de novo* a Rule 12(b)(6) dismissal on statute of limitations grounds. *Tobey*, 890 F.3d at 645; *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017). Our analysis begins and ends with *Heck*, the controlling case. *Heck* addressed whether and when a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983. *Heck*, 512 U.S. at 478. While Heck was serving a fifteen-year sentence for manslaughter, he brought a section 1983 action against two prosecutors and a state police inspector asserting that they engaged in an unlawful investigation that led to his arrest, that they knowingly destroyed exculpatory evidence, and that they caused an

unlawful voice identification procedure to be used at his trial. 512 U.S. at 478–79.

The Court noted that such a case lies at the intersection of federal prisoner litigation under section 1983 and the federal habeas corpus statute. 512 U.S. at 480. In analyzing the claim, the Court first found that Heck's section 1983 claim most closely resembled the common law tort of malicious prosecution, which allows damages for confinement imposed pursuant to legal process, including compensation for arrest and imprisonment, discomfort or injury to health, and loss of time and deprivation of society. 512 U.S. at 484. An element that must be pleaded and proved in a malicious prosecution case is termination of the prior criminal proceeding in favor of the accused. This requirement avoids creating two conflicting resolutions arising out of the same transaction, steering clear of parallel litigation over the issue of guilt. The requirement also prevents a convicted criminal from collaterally attacking the conviction through a civil suit:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions

whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck*, 512 U.S. at 486–87 (footnotes omitted; emphasis in original).

The Court made pellucid the broad consequences of its plainly stated rule:

> We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.

*Heck*, 512 U.S. at 489. Returning to its comparison to common law torts, the Court concluded that, just as a claim for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, "so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. at 489–90. *See also Wallace v. Kato*, 549 U.S. 384, 393 (2007) (noting that the *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has *not* been invalidated; *Heck* "delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn.").

Applying this rule to Savory's case, we first look at the nature of his section 1983 claims and conclude that, like Heck's claims, they strongly resemble the common law tort of malicious prosecution. Indeed, Savory's claims largely echo Heck's complaint, asserting the suppression of exculpatory evidence and the fabrication of false evidence in order to effect a wrongful conviction. The statute of limitations for such claims in Illinois is two years. *Heck* supplies the rule for accrual of the claim. Because Savory's claims "would necessarily imply the

invalidity of his conviction or sentence," his section 1983 claims could not accrue until "the conviction or sentence ha[d] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. In Savory's case, that occurred on January 12, 2015, when the governor of Illinois pardoned him. Until that moment, his conviction was intact and he had no cause of action under section 1983. *Heck*, 512 U.S. at 489–90. His January 11, 2017 lawsuit was therefore timely under *Heck*, and we must reverse the district court's judgment and remand for further proceedings.

We said that our analysis began and ended with *Heck* but for the sake of clarity, we must address the defendant's arguments that concurring and dissenting opinions of certain Supreme Court justices cobbled together into a seeming majority or the opinions of this court may somehow override the prime directive of *Heck*. The misunderstanding that led to the erroneous result here originated in a concurrence in *Heck* filed by Justice Souter and joined by Justices Blackmun, Stevens and O'Connor. In that concurrence, Justice Souter agreed that reference to the common law tort of malicious prosecution was a useful starting point but he asserted that it could not alone provide the answer to the conundrum found at the intersection between section 1983 and the federal habeas statute. Ultimately, Justice Souter suggested a slightly different rule that he submitted would avoid any collision between section 1983 and the habeas statute:

> A state prisoner may seek federal-court § 1983
> damages for unconstitutional conviction or
> confinement, but only if he has previously
> established the unlawfulness of his conviction or
> confinement, as on appeal or on habeas. This has
> the effect of requiring a state prisoner challeng-
> ing the lawfulness of his confinement to follow
> habeas's rules before seeking § 1983 damages for
> unlawful confinement in federal court[.]

*Heck*, 512 U.S. at 498 (Souter, J., concurring).

For persons **not** in custody for the purposes of the habeas statute, "people who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences," there would be no requirement to show "the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment" because:

> the result would be to deny any federal forum
> for claiming a deprivation of federal rights to
> those who cannot first obtain a favorable state
> ruling. The reason, of course, is that individuals
> not "in custody" cannot invoke federal habeas
> jurisdiction, the only statutory mechanism
> besides § 1983 by which individuals may sue
> state officials in federal court for violating fed-
> eral rights. That would be an untoward result.

*Heck*, 512 U.S. at 500 (Souter, J., concurring).

In contrast, of course, the *Heck* majority's rule requires that a plaintiff **always** obtain a favorable resolution of the criminal conviction before bringing a section 1983 claim that would necessarily imply the invalidity of a conviction or sentence. The majority opinion specifically rejected Justice Souter's alternate rule:

> Justice SOUTER also adopts the common-law principle that one cannot use the device of a civil tort action to challenge the validity of an out-standing criminal conviction, but thinks it necessary to abandon that principle in those cases (of which no real-life example comes to mind) involving former state prisoners who, because they are no longer in custody, cannot bring postconviction challenges. We think the principle barring collateral attacks—a long-standing and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated.

*Heck*, 512 U.S. at 490 n.10 (citations omitted).

The Supreme Court has reaffirmed the *Heck* framework several times. *See Wallace*, 549 U.S. at 393; *Nelson v. Campbell*, 541 U.S. 637, 646 (2004) (citing *Heck* for the proposition that "a § 1983 suit for damages that would 'necessarily imply' the invalidity of the fact of an inmate's conviction, or 'necessarily imply' the invalidity of the length of an inmate's sentence, is not cognizable under § 1983 unless and until the inmate obtains favorable termination of a state, or federal habeas,

challenge to his conviction or sentence"); *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (same). But in *Spencer v. Kemna*, 523 U.S. 1, 21 (1998), Justice Souter again filed a concurrence expressing the view that he urged in his *Heck* concurrence, namely "that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." Justice Ginsburg, who had been in the majority in *Heck*, this time agreed with Justice Souter (who was also joined by Justices O'Connor and Breyer), joining his concurrence and filing her own: "Individuals without recourse to the habeas statute because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within § 1983's 'broad reach.'" *Spencer*, 523 U.S. at 21 (Ginsburg, J., concurring). Justice Stevens dissented in *Spencer*, but he approved Justice Souter's basic premise: "Given the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice SOUTER explains, that he may bring an action under 42 U.S.C. § 1983." *Spencer*, 523 U.S. at 25 n.8 (Stevens, J., dissenting).

The defendants contended in the district court and maintain on appeal that this *dicta* in concurring and dissenting opinions, cobbled together, now formed a new majority, essentially overruling footnote 10 in *Heck*. But it is axiomatic that *dicta* from a collection of concurrences and dissents may not overrule majority opinions. *Cross v. United States*, 892 F.3d 288, 303 (7th Cir. 2018) ("Unless and until a majority of the Court overrules the majority opinions in [two prior cases], they

continue to bind us."). The Supreme Court may eventually adopt Justice Souter's view but it has not yet done so and we are bound by *Heck*. *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). *See also Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004) (characterizing as unsettled the position taken by Justice Souter in *Heck* and by Justice Ginsburg in *Spencer* that "unavailability of habeas for other reasons may also dispense with the *Heck* requirement").

The defendants also asserted below and continue to argue on appeal that this court has abrogated the rule in *Heck*, citing four cases: *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Simpson v. Nickel*, 450 F.3d 303 (7th Cir. 2006); *Burd v. Sessler*, 702 F.3d 429 (7th Cir. 2012); and *Whitfield v. Howard*, 852 F.3d 656 (7th Cir. 2017). According to the defendants, those cases "together sensibly hold an individual who is no longer in custody with no access to habeas corpus relief may bring a § 1983 action challenging the constitutionality of a still standing conviction without first satisfying the favorable termination rule of *Heck*." Brief of Defendants-Appellees, at 7–8. As we just explained, this court may not on its own initiative overturn decisions of the Supreme Court, and in fact none of the cited cases overturned the core holding of *Heck* or purported to do so.

In *DeWalt*, we considered whether a prisoner could bring a section 1983 claim related to the loss of his prison job when

the underlying disciplinary sanction had not been overturned or invalidated. Because DeWalt did not challenge the fact or duration of his confinement, a habeas petition was not the appropriate vehicle for his claims. 224 F.3d at 617. DeWalt challenged only a condition of his confinement—namely, his prison job—making a section 1983 claim the appropriate course of action. *Id*. We summarized our holding with the rule "that the unavailability of federal habeas relief does not preclude a prisoner from bringing a § 1983 action to challenge a condition of his confinement that results from a prison disciplinary action." 224 F.3d at 618. We discussed *Spencer* and *Heck* only in the context of answering an open question, namely, "whether *Heck*'s favorable-termination requirement bars a prisoner's challenge under § 1983 to an administrative sanction that does not affect the length of confinement." 224 F.3d at 616. We concluded that it did not, a position later approved by the Supreme Court. *See Muhammad*, 540 U.S. at 754 (noting that the Seventh Circuit in *DeWalt* had taken the position that *Heck* did not apply to prison disciplinary proceedings in the absence of any implication going to the fact or duration of the underlying sentence, and concluding that because Muhammad had similarly raised no claim on which habeas relief could have been granted on any recognized theory, *Heck*'s favorable-termination requirement was inapplicable).

*Simpson* similarly addressed a claim by a prisoner related to the conditions of his confinement rather than the lawfulness of his conviction or duration of confinement. Simpson alleged that when he complained about prison staff, they retaliated against him by issuing bogus conduct reports and arranging for him to be disciplined. 450 F.3d at 305. As a result, he was

subjected to 300 days in segregation and lost twenty-five days of recreation privileges. We reversed the district court's dismissal for failure to state a claim. The district court had concluded that, under *Heck*, Simpson could not bring a suit that was inconsistent with the findings of the prison disciplinary board unless a state court set those findings aside. We reaffirmed the core holding of *Heck*, "that a prisoner whose grievance implies the invalidity of ongoing custody must seek review by collateral attack." 450 F.3d at 306–07. But we also noted that *Heck* was not applicable to Simpson's claims because "neither disciplinary segregation nor a reduction in the amount of recreation is a form of 'custody' under federal law." 450 F.3d at 307. Simpson was not bringing a claim that implied the invalidity of his underlying conviction or sentence and was therefore not subject to *Heck*'s favorable-termination requirement. We noted that *Muhammad* and *DeWalt* established that:

> the doctrine of *Heck* and *Edwards* is limited to prisoners who are "in custody" as a result of the defendants' challenged acts, and who therefore are able to seek collateral review. Take away the possibility of collateral review and § 1983 becomes available. Simpson can't obtain collateral relief in either state or federal court, so he isn't (and never was) affected by *Heck* or *Edwards*.

*Simpson*, 450 F.3d at 307. Read out of context, we understand how this passage and other passages in *Simpson* confused the issue in the district court. Some of this language could be read to imply that the inability to obtain habeas relief because the sentence has been served could relieve a section 1983 litigant of *Heck*'s favorable-termination requirement. But *Heck* itself

rejected that position and *Muhammad* made clear that the Court had not yet had an occasion to settle the minority views expressed in *Heck* and *Spencer*.

Neither *Burd* nor *Whitfield* support a contrary result. Burd brought a section 1983 suit for damages, alleging that prison officials deprived him of access to the prison library, which in turn prevented him from preparing a timely motion to withdraw his guilty plea. *Burd*, 702 F.3d at 431. Burd asserted that *Heck* did not apply to his claim because he would not necessarily have been successful in seeking to withdraw his plea. We concluded that the damages that Burd was seeking to recover were predicated on a successful challenge to his conviction, and so *Heck* applied. 702 F.3d at 434–35. And "[t]he rule in *Heck* forbids the maintenance of such a damages action until the plaintiff can demonstrate his injury by establishing the invalidity of the underlying judgment." We also rejected Burd's alternate theory, that he should be allowed to proceed with his section 1983 claim even though it implied that his conviction was invalid because his sentence was fully discharged and habeas relief was unavailable to him. 702 F.3d at 435–36. But Burd had failed to pursue habeas relief when it was available to him during his time in custody. We therefore held "that *Heck* applies where a § 1983 plaintiff could have sought collateral relief at an earlier time but declined the opportunity and waited until collateral relief became unavailable before suing." 702 F.3d at 436.

*Whitfield* addressed a unique factual scenario that bears no resemblance to Savory's case. *Whitfield* reaffirmed *Heck*, noting that in "section 1983 suits that did not directly seek immediate or speedier release, but rather sought monetary damages that

would call into question the validity of a conviction or term of confinement, … a prisoner has no claim under section 1983 until he receives a favorable decision on his underlying conviction or sentence, such as through a reversal or grant of habeas corpus relief." *Whitfield*, 852 F.3d at 661. Whitfield sought damages under section 1983 for the retaliatory revocation of good time credits. 852 F.3d at 659. He sought collateral review while he was in prison (albeit in a manner we characterized as not "procedurally perfect"), including a federal habeas claim, but was released from custody before his claims were resolved.

We found that *Balisok* rather than *Heck* most directly governed Whitfield's section 1983 claims. *Whitfield*, 852 F.3d at 663. *Balisok* addressed the claim of a state prisoner alleging due process violations for procedures used in a disciplinary hearing that resulted in a loss of "good-time" credits. *Balisok*, 520 U.S. at 643. The *Balisok* Court found that "[t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." 520 U.S. at 646. But Balisok had not demonstrated that the result of the disciplinary hearing had been set aside, and so the Court found his claim not cognizable under § 1983. 520 U.S. at 648.

We distinguished *Balisok* in *Whitfield*:

> Had [Balisok] prevailed, the result of the disciplinary proceeding would have to have been set aside. Whitfield, in contrast, is arguing that the hearings should never have taken place at all, because they were acts of retaliation for his

exercise of rights protected by the First Amend-
ment. He has no quarrel with the procedures
used in the prison disciplinary system. He could
just as well be saying that a prison official mali-
ciously calculated an improper release date, or
"lost" the order authorizing his release in retali-
ation for protected activity. In short, the essence
of Whitfield's complaint is the link between
retaliation and his delayed release; the fact that
disciplinary proceedings were the mechanism is
not essential. *Balisok* also took care to be precise,
when it held that the petitioner's claim for
prospective injunctive relief could go forward
under section 1983, since it did not necessarily
imply anything about the loss of good-time
credits.

*Whitfield*, 852 F.3d at 663. Unlike Balisok, Whitfield was not
seeking to set aside the result of a process but rather was
claiming that the process should not have occurred at all. And
unlike Burd, Whitfield had pursued collateral relief to the
degree possible, until he was released from custody and the
district court dismissed his habeas petition as moot. In
*Whitfield*, we thus addressed a fact scenario at the outer edges
of *Balisok*. It has little bearing on Savory's claims, which lie at
the core of *Heck*.

## III.

We end where we began: *Heck* controls the result here.
Savory's claims, which necessarily imply the invalidity of his
conviction, did not accrue until he was pardoned by the

governor of Illinois. His section 1983 action was therefore timely filed, and we reverse the district court's judgment and remand for further proceedings.

REVERSED AND REMANDED.