NO. 4-05-1035          Filed 12/19/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| KENNETH R. DYE, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| GUY D. PIERCE, Warden; ROGER E. | ) | No. 05MR110 |
| WALKER; MELODY FORD; ROBERT ELLINGER; | ) | |
| ERIKA HOWARD; ANNABELLE MOTTELER; | ) | |
| WESLEY G. WILES; BRIAN FAIRCHILD; | ) | Honorable |
| JEFF YUSKO; and CHRIS MAYBACK, | ) | Harold J. Frobish, |
|     Defendants-Appellees. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In October 2005, plaintiff, Kenneth R. Dye, an inmate at Pontiac Correctional Center, pro se filed a petition for writ of mandamus, in which he alleged that defendants, Guy D. Pierce (Pontiac's warden), Roger E. Walker (the Director of the Illinois Department of Corrections (DOC)), Melody Ford, Robert Ellinger, Erika Howard, Annabelle Motteler, Wesley G. Wiles, Brian Fairchild, Jeff Yusko, and Chris Mayback (DOC employees), violated his due-process rights in prison-disciplinary proceedings arising out of a March 2005 incident at Western Illinois Correctional Center.

In November 2005, defendants filed a motion to dismiss Dye's mandamus complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)). Following a December

2005 hearing, the trial court granted defendants' motion to dismiss Dye's complaint.

Dye appeals, arguing that (1) the trial court erred by dismissing his mandamus complaint and (2) he was denied due process during the preparation of his appeal. We disagree and affirm.

I. BACKGROUND

Dye's October 2005 mandamus complaint, and the attachments thereto, in pertinent part, show the following. In a March 17, 2005, disciplinary report, prison nurse Delores Drennen stated that she had attempted to draw blood from Dye's right arm. After she punctured his skin, he complained of a "pinching" feeling. Drennen asked another nurse to assist her. Dye then yanked his right arm back, pulling the needle out of his arm. He then grabbed Drennen and tried to push the needle into her arm. She turned sideways to avoid contact with the needle.

A section at the bottom of the disciplinary report indicated that the report was served on Dye by correctional officer Mayback. It was not signed by Dye and a check mark appears in the box next to the words: "Committed Person Refused to Sign."

Following a March 21, 2005, adjustment committee hearing, the adjustment committee found Dye guilty of assault against Drennen. The adjustment committee's final report indi-

- 2 -

cated that Dye "refused to appear before the committee to address the charges." As a result of the proceeding, Dye was placed in segregation for one year, had one year of good-conduct credit revoked, and was placed under other restrictions.

On March 25, 2005, Dye filed a grievance, in which he explained his version of the incident with Drennan. For relief, Dye requested that (1) he and the nurses submit to polygraph examinations and (2) the case be turned over to the "district attorney" so that it could go before a judge.

On March 28, 2005, Dye filed another grievance, in which he restated his version of events and added that (1) he did not receive a disciplinary ticket and (2) was not given the opportunity to appear before the adjustment committee. The bottom section of the grievance form contains a section for "counselor's response." In that section, Wiles, a correctional counselor, wrote that he contacted correctional officer Yusko, who said that he attempted to wake Dye several times on the morning of the hearing, but Dye "failed to respond."

On March 29, 2005, Dye filed another grievance, stating that Yusko either went to the wrong cell or was not telling the truth. In the counselor's response section of that grievance form, Wiles wrote that he had contacted Yusko, who said that he went to the correct cell and that Dye failed to wake up.

In April 2005, Dye filed a request under the Freedom of

- 3 -

Information Act (5 ILCS 140/1 through 11 (West 2004)) seeking copies of the following: (1) the March 17, 2005, statement he gave to internal-affairs investigators regarding the incident with Drennen; (2) Drennen's incident report; and (3) the refusal and waiver forms that Yusko provided to the adjustment committee.

Also in April 2005, a grievance officer filed a report recommending that Dye's grievance be denied. On April 15, 2005, the chief administrative officer concurred with the grievance officer's decision.

Dye filed additional grievances in May and early June 2005. On June 8, 2005, Dye filed another grievance, in which he stated that he had just received a copy of the original disciplinary ticket and learned which correctional officer had claimed to have served the ticket on him.

On July 15, 2005, an administrative review board hearing was conducted via video conference. Based on its review of all the information and a compliance check of procedural due process safeguards, the review board was reasonably certain that Dye committed the alleged offense and recommended that his grievance be denied.

In September 2005, Dye filed a petition for leave to file a mandamus petition, alleging that (1) he was deprived of a disciplinary hearing on March 21, 2005, (2) he did not receive a copy of the charges against him 24 hours before the hearing, and

- 4 -

(3) he was deprived of the right to call witnesses and take a polygraph test. Dye sought either (1) dismissal of the charges against him or (2) an adjustment committee hearing, a polygraph test, the opportunity to interview his witnesses, and to have the case moved to an "outside court."

In October 2005, Dye filed his mandamus complaint, alleging that defendants failed to perform the following specific duties: (1) "to heed [his] plea that [he] didn't receive a copy of charges until 2[ ]1/2 months later," (2) to question Yusko and Mayback regarding his grievance, (3) to give him an adjustment committee hearing, (4) to interview his witnesses and allow him to take a polygraph test, and (5) to have the nurses and correctional officers submit to a polygraph test. For relief, Dye sought (1) dismissal of the charges and rescission of the penalties or (2) a jury trial or adjustment committee hearing at which witnesses could testify and polygraph evidence could be considered.

In November 2005, defendants filed a section 2-615 motion to dismiss Dye's mandamus petition (735 ILCS 5/2-615 (West 2004)). Specifically, the motion asserted that (1) Dye received the due process to which he was entitled and (2) Dye did not have a cause of action under mandamus for denial of a Freedom of Information Act request.

Following a December 2005 hearing on defendants' motion

- 5 -

to dismiss, the trial court granted the motion.  In its written docket entry, the court wrote as follows:

> "[The] court finds [Dye] cannot show that he did not receive the disciplinary report in question or that he failed to receive an opportunity to attend the adjudication hearing, from his own submissions; the court further finds that [Dye's] challenge regarding the Freedom of Information Act has been improperly brought."

This appeal followed.

## II. THE TRIAL COURT'S DISMISSAL OF DYE'S MANDAMUS COMPLAINT

Dye argues that the trial court erred by dismissing his mandamus complaint because his constitutional rights were violated in his prison-disciplinary proceedings.  We disagree.

"We review de novo a trial court's dismissal of a complaint for failure to state a cause of action."  Scotti v. Taylor, 351 Ill. App. 3d 884, 887, 815 N.E.2d 10, 12 (2004). Exhibits attached to a complaint are considered part of the complaint and may be considered when addressing a section 2-615 motion to dismiss.  Armstrong v. Snyder, 336 Ill. App. 3d 567, 569, 783 N.E.2d 1101, 1103 (2003).

> "Mandamus relief is an extraordinary remedy to enforce, as a matter of right, the

- 6 -

performance of official duties by a public official where the official is not exercising discretion. A court will not grant a writ of mandamus unless the petitioner can demonstrate a clear, affirmative right to relief, a clear duty of the official to act, and clear authority in the official to comply with the writ. The writ will not lie when its effect is to substitute the court's judgment or discretion for the official's judgment or discretion. Mandamus relief, therefore, is not appropriate to regulate a course of official conduct or to enforce the performance of official duties generally." Hatch v. Szymanski, 325 Ill. App. 3d 736, 739, 759 N.E.2d 585, 588 (2001).

An allegation of a due-process-rights violation also states a cause of action in mandamus. Armstrong, 336 Ill. App. 3d at 569, 783 N.E.2d at 1103. The United States Supreme Court has held that under the principles of due process, inmates are entitled to the following process in disciplinary proceedings: (1) notice of the disciplinary charges at least 24 hours prior to the hearing; (2) when consistent with institutional safety and correctional goals, an opportunity to call witnesses and present

documentary evidence in their defense; and (3) a written state-ment by the fact finder of the evidence relied on in finding the inmate guilty of committing the offense and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-66, 41 L. Ed. 2d 935, 955-56, 94 S. Ct. 2963, 2978-79 (1974).

Dye first contends that he was denied due process in that (1) he did not receive notice of the charge and (2) he did not have the opportunity to appear before the adjustment commit-tee or present evidence. To succeed on a mandamus complaint, the plaintiff must be able to show a clear, affirmative right to relief. Hatch, 325 Ill. App. 3d at 739, 759 N.E.2d at 588. The attachments to Dye's complaint show that (1) Mayback served him with notice of the charge, (2) Yusko attempted to rouse Dye and escort him to the hearing, and (3) the administrative review board later considered Dye's grievance regarding the disciplinary process and determined that his grievance should be denied. Thus, through his due-process claims, Dye essentially requests that this court conclude that the committee and the review board erred by not believing his version of events. It is the role of those bodies to assess the credibility of witnesses and make findings based on their assessments. Mandamus relief is avail-able for the enforcement of official ministerial duties and is not a mechanism for reversing the review board's factual findings and credibility determinations. We thus conclude that Dye's

_mandamus_ complaint failed to assert facts showing a clear right to _mandamus_ relief.

Dye also contends that he was denied due process in that the Illinois Department of Corrections refused to disclose certain internal-affairs reports during his grievance process. Specifically, he contends that the content of those reports supported his claims of innocence and would have changed the outcome of his grievance. We disagree.

DOC rules provide that on appeal of an inmate's grievance, the administrative review board may call witnesses or examine records "at its discretion." 20 Ill. Adm. Code §504.850(d), as amended by 27 Ill. Reg. 6214, 6288 (eff. May 1, 2003).

The essence of Dye's argument is that the administrative review board did not consider sufficient evidence to fairly adjudicate his claim. Because the administrative review board's decision of what evidence to consider is wholly discretionary, it cannot be challenged through a _mandamus_ petition. See _Cannon v. Quinley_, 351 Ill. App. 3d 1120, 1131, 815 N.E.2d 443, 452 (2004), quoting _Helm v. Washington_, 308 Ill. App. 3d 255, 257, 720 N.E.2d 326, 328 (1999) ("'Mandamus is an extraordinary remedy that may be used only to compel a public official or body to perform a ministerial duty in which the official exercises no discretion'").

- 9 -

We thus conclude that the trial court did not err by dismissing Dye's <u>mandamus</u> complaint.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH and TURNER, JJ., concur.