



FILED

Apr 18 2024, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N   T H E

# Court of Appeals of Indiana

Shaka Adiyia Shakur,

*Appellant-Plaintiff*

v.

Jack Hendrix Executive Director, et al.,

*Appellees-Defendants*

---

April 18, 2024

Court of Appeals Case No.
23A-CT-1564

Appeal from the Sullivan Circuit Court

The Honorable Robert E. Hunley, II, Judge

Trial Court Cause No.
77C01-1902-CT-64

---

**Opinion by Chief Judge Altice**
Judges Bradford and Felix concur.

**Altice, Chief Judge.**

## Case Summary

Shaka Shakur appeals the trial court's grant of summary judgment in favor of Indiana Department of Correction (DOC) Commissioner Robert Carter, Jr. (Commissioner Carter), DOC Director Jack Hendrix, and Westville Correctional Facility (Westville) Warden Richard Brown (collectively, the DOC Officials). Shakur claims that the trial court erred in concluding that his claims of due process violations and cruel and unusual punishment were time-barred. Shakur further contends that genuine issues of material fact remain as to whether his constitutional rights were violated as a result of DOC disciplinary sanctions and alleged medical neglect at various DOC facilities.

We affirm.

## Facts and Procedural History

On July 25, 2003, Shakur was transferred to the Pendleton Correctional Facility (Pendleton) following the imposition of a sixty-three-year sentence for murder. Thereafter, Shakur was transferred to the following DOC facilities:

> 4. [Shakur was] transferred to Wabash Valley Correctional Facility [Wabash] on July 20, 2005.

> 5. [The next day], Shakur was . . . transferred to [Westville]. . . .

> 6. [Shakur] was . . . transferred back to [Wabash] on November 3, 2005.

7. [Shakur] remained there until he was transferred to [Westville] on March 2, 2012.

8. Thereafter, [Shakur] was transferred to New Castle Correctional Facility [New Castle] on March 25, 2014.

9. [Shakur] was then transferred to [Pendleton] on July 17, 2014.

10. Thereafter, [Shakur] was transferred back to [Wabash] on January 8, 2016.

11. [Shakur] remained there until he was transferred to Nottoway Correctional Center in Burkeville, Virginia [Virginia Correctional Center] pursuant to an interstate compact agreement on December 19. 2018.

*Appellant's Appendix Vol. II* at 20-21.

[4]     In January 2004, Shakur received his first conduct violation report while incarcerated at the DOC for refusing to accept a work assignment. Thereafter, Shakur committed more than thirty-five additional disciplinary offenses at various DOC facilities, and at least three of those incidents resulted in criminal charges against him. More specifically, a murder charge in 2005 was resolved through a plea agreement, wherein Shakur pleaded guilty to possession of a dangerous device, a Class B felony, and was sentenced to twenty years. Shakur also was convicted of Class B felony battery by bodily waste in 2006, for which he was sentenced to a two-year term of incarceration. And in 2017, Shakur pleaded guilty to Level 5 felony battery and was sentenced to three years for that offense.

[5]     As a consequence of Shakur's 2005 murder charge, a one-year disciplinary segregation sanction was imposed. After completing that sanction, Shakur continued to remain in "restrictive housing" at the DOC. *Appellant's Appendix Vol. II* at 227. Restrictive housing required Shakur to be isolated from the general prison population and reside in a single cell. Shakur, however, could have visits from family members, and he was permitted to make weekly phone calls. Shakur could also use the prison library and exercise in a fenced-in area. Mental health care providers performed weekly rounds in Shakur's unit, and Shakur could request additional mental health care services from prison staff in addition to those weekly visits.

[6]     On May 23, 2014, a disciplinary hearing officer found Shakur guilty of refusing to submit to a drug test and a suspended three-month sanction in disciplinary segregation was imposed. Three months later, Shakur was found guilty of possessing contraband and a cellphone, both of which resulted in placement in disciplinary segregation. Following those incidents, Shakur remained in disciplinary segregation for the duration of his incarceration in the DOC.

[7]     On February 23, 2017, Director Carter issued an Executive Directive (Directive) establishing that any offender found guilty of a battery or assault involving a "Department staff member, volunteer, or visitor" that results in "bodily injury or serious bodily injury, . . . shall receive, in addition to other sanctions for the offense . . . *a loss of the entire balance of the offender's accumulated earned credit time.*" *Id.* at 167 (emphasis added). The Directive was effective

immediately and was "applicable to all [DOC] facilities housing adult offenders." *Id.*

[8] Six months later when Shakur was being escorted to Wabash's recreation area, he removed his restraints, pulled a sharpened piece of plastic from his waistband, and stabbed a correctional officer multiple times. Shakur was found guilty of battery on a correctional officer for this offense, which resulted in the revocation of all 3,190 days of his earned credit time. Shakur was thereafter transferred to the Virginia Correctional Center.

[9] On February 7, 2019, Shakur filed an action against the DOC Officials pursuant to 42 U.S.C. § 1983[1] (Section 1983 Action), alleging violations of his Fourteenth and Eighth Amendment rights under the United States

---

[1] 42 U.S.C. § 1983 provides in part that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 provides a civil remedy against a person who, under color of state law, subjects a United States citizen to the deprivation of any rights, privileges, or immunities secured by the federal Constitution or federal laws. *Long v. Durnil,* 697 N.E.2d 100, 105 (Ind. Ct. App. 1998), *trans. denied.* In order to recover damages under this statute, a plaintiff must show that (1) he held a constitutionally protected right, (2) he was deprived of this right, (3) the defendant acted with reckless indifference to cause this deprivation, and (4) the defendant acted under color of state law. *Id.* 42 U.S.C. § 1983 was designed to prevent the states from violating the Constitution and certain federal statutes and to compensate injured plaintiffs for deprivations of those federal rights. *Culver-Union Twp. Ambulance Serv. v. Steindler,* 629 N.E.2d 1231,1233 (Ind. 1994).

Constitution. Shakur asserted that the DOC Officials denied him "adequate process and meaningful periodic review concerning his approximately thirteen . . . years in solitary confinement" in violation of the Fourteenth Amendment. *Appellant's Appendix Vol.* II at 31-32. Shakur also claimed that his due process rights were violated by "the retroactive enlargement of his sentence by more than eight (8) years," that his Eighth Amendment rights were violated by the "denial of access to adequate mental health care," and that the DOC Officials failed to protect him "from the known danger of extended placement in solitary confinement." *Id.* at 32. Shakur sought damages and the reinstatement of his 3,190 days of credit time.

[10] After denying the allegations, the DOC Officials filed a motion for summary judgment, claiming that they were entitled to judgment as a matter of law because Shakur's claims regarding his housing status from 2005 to 2016 were barred under the two-year statute of limitations, that Shakur's due process rights were not implicated because he had no liberty interest in being free from disciplinary segregation, and that Shakur's Eighth Amendment rights were not violated because Shakur was properly ordered to remain in disciplinary housing and was provided with adequate mental health care and counseling during his incarceration.

[11] Following a hearing, the trial court granted the DOC Officials' motion for summary judgment on June 9, 2023. The order states in relevant part that

> 4. Shakur's claims regarding his housing status from 2005 to 2016 are barred by the statute of limitations.

5. Shakur was appropriately placed in disciplinary segregation.

6. Shakur appropriately remained in segregated housing due to his ongoing severe conduct violations and criminal charges, including the stabbing of a Correctional Officer, and the safety needs of the facilities.

7. A prisoner's claim of violations of due process stemming from a prison disciplinary hearing is not cognizable under 42 U.S.C. § 1983 when the prisoner's "claim for declaratory relief and money damages, [is] based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed." *Edwards v. Balisock,* 520 U.S. 641, 648 (1997).

8. [Shakur] has no liberty interest in being free from disciplinary segregation and due process protections do not apply in this case.

9. To the extent it was owed, [Shakur] received adequate due process in his disciplinary hearings. Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.

10. Deliberate indifference is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). To prove deliberate indifference, a prisoner must establish that the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.

11. [Shakur] has not provided any evidence to support his Eighth Amendment claims against [the DOC Officials]. [Shakur] was evaluated by a psychiatrist in 2018 and had no mental health issues as alleged in his Complaint.

12. Based on the foregoing, . . . the [DOC Officials] . . . are entitled to summary judgment as a matter of law.

Shakur now appeals.

## Discussion and Decision

## I. Standard of Review

Our Supreme Court recently reiterated our standard of review of a trial court's decision on summary judgment as follows:

> We review the trial court's summary judgment decision de novo. [The moving party] is entitled to summary judgment if the designated evidence shows there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. A genuine issue of material fact exists when there is contrary evidence showing differing accounts of the truth, or when conflicting reasonable inferences may be drawn from the parties' consistent accounts and resolution of that conflict will affect the outcome of a claim. To the extent we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party.

*Z.D. v. Community Health Net., Inc.*, 217 N.E.3d 527, 531 (Ind. 2023) (citations and internal quotes omitted). When reviewing the grant of summary judgment, we may affirm the trial court's ruling on any basis apparent in the record. *Markey v. Estate of Markey,* 38 N.E.3d 1003, 1006-07 (Ind. 2015).

## II. Shakur's Claims

### A. Due Process

Shakur contends that the trial court erred in determining that his claims against the DOC Officials are time-barred. He argues that his Section 1983 Action is not foreclosed because the DOC Officials' conduct constituted a "continuing violation" and, therefore, the statute of limitations was not triggered. *Appellant's Brief* at 16. Shakur further maintains that genuine issues of material fact remain as to whether his retention in solitary confinement and the DOC Officials' conduct regarding the revocation of his credit time violated his right to due process.

At the outset, we note that our research has revealed little Indiana authority on point as to the issues that Shakur presents in this appeal. Thus, we will turn to our sister states and federal cases for guidance and persuasive authority. *See Specialty Foods of Indiana, Inc. v. City of South Bend*, 997 N.E.2d 23, 27 (Ind. Ct. App. 2013), *trans. denied.* As for Shakur's statute of limitations argument, at least one court has determined that the "applicable statute of limitations for section 1983 claims is the state period for personal injury torts." *Kalimara v. Illinois Dep't of Corr.*, 879 F.2d 276, 277 (7th Cir. 1989) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). Indiana's personal injury statute, Ind. Code § 34-11-2-4(a), establishes that "[a]n action must be commenced within two (2) years after the cause of action accrues." A cause of action "accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of

the tortious act of another." *Indiana Dep't of Child Servs. v. Morgan*, 148 N.E.3d 1030, 1033 (Ind. Ct. App. 2020), *trans. denied*.

[16] Here, the designated evidence shows that although Shakur was continuously placed in restrictive housing since 2005 at various DOC facilities, he did not file his Section 1983 Action against the DOC Officials until February 2019. Thus, in accordance with the two-year limitations period set forth in I.C. § 34-11-11-2-4(a), Shakur's claims were limited to damages—if any—that accrued within the twenty-four-month window prior to that date. Any claims for relief that accrued before that deadline were time-barred and unavailable to him.

[17] Additionally, although Shakur maintains that the DOC Officials' conduct amounted to a continuing episode of harm against him that would preserve his claim for damages before the 2017 cutoff, we note that the "continuing wrong" doctrine applies where an entire course of conduct combines to produce an injury. *Crowe, Chizek, & Co., L.L.P. v. Oil Tech., Inc.,* 771 N.E.2d 1203, 1210 (Ind. Ct. App. 2002), *trans. denied.* When a loss is intermittent and recurring, "new limitations are triggered" each time the loss occurs. *Kerr v. City of South Bend,* 48 N.E.3d 348, 355 (Ind. Ct. App. 2015).

[18] The designated evidence in this case does not establish that Shakur's placement in disciplinary segregation at the various DOC facilities was a single, continuous episode. Rather, those sanctions resulted from a series of disciplinary proceedings that occurred at various times in 2005 and from 2013-17. Each offense that Shakur committed, and the sanctions imposed thereon,

were separate and did not constitute an ongoing episode. Hence, Shakur's recovery—if any—is "limited to losses which occurred beginning" two years before he filed his complaint. *Id.* As Shakur did not file his complaint until February 2019, his claims for damages occurring before February 2017 are time-barred under I.C. § 34-11-11-2-4(a), and only those that accrued after that date may proceed.

[19] Turning to those instances and Shakur's claims of alleged violations of due process, the United States Supreme Court has observed that procedural due process claims are typically considered in two steps. First, it is determined whether the State has deprived the individual of a property or liberty interest, and the second step examines what process is due and whether the procedures utilized by the State comport with due process. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Whether a liberty interest exists requires examining state law to determine if the person has a legitimate claim of entitlement. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. Of Regents v. Roth*, 408 U.S. 564, 569 (1972). Therefore, if neither a liberty nor a property interest is at stake, the State may "use any procedures it chooses, or no procedures at all." *Montgomery v. Anderson*, 262 F.3d 641, 645 (7th Cir. 2001).

[20] Here, Shakur is challenging the sanctions imposed while incarcerated in the DOC, claiming that the DOC Officials violated his due process rights by

revoking all of his credit time and depriving him of his liberty interest when he was placed in disciplinary segregation. Indiana state prisoners have a liberty interest in good time credits, and they are entitled to due process before the State may revoke those credits. *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004). We note, however, that our courts lack subject matter jurisdiction to consider challenges to DOC's administrative disciplinary decisions. *Blanck v. Indiana Dep't of Corr.,* 829 N.E.2d 505, 507 (Ind. 2005). And prisoners may not generally invoke U.S.C. § 1983 to collaterally attack the outcome of prison disciplinary matters. *See Preiser v. Rodriguez*, 411 U.S.475, 476 (1973). Instead, State prisoners who desire to challenge their sentences or administrative orders revoking good time credits must seek habeas corpus relief because they are contesting the fact or duration of confinement. *Id.* at 489. Stated differently when an offender challenges the sanctions imposed in a prison discipline proceeding on constitutional grounds, "habeas corpus—*not* §1983—is the specific instrument to obtain release from unlawful imprisonment." *Morgan v. Schott,* 914 F.3d 1115, 1119 (7th Cir. 2019) (emphasis added). The two statutes are not interchangeable. Thus, when a prisoner challenges the fact or "duration of his confinement," he fails to state a cognizable Section 1983 claim. *Id.* (citing *Preiser*, 411 U.S. at 489).

[21] We also observe that before an offender can present a claim in a Section 1983 Action alleging a constitutional violation regarding a prison disciplinary proceeding, he must satisfy the "favorable termination rule" set forth in *Heck v. Humphrey,* 512 U.S. 477 (1994). That is, a prisoner must first have a conviction

or sentence reversed, expunged, or called into question through a writ of habeas corpus for an "allegedly unconstitutional conviction or imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *Id.* at 486-87; *see also Edwards v. Balisok,* 520 U.S. 641, 648 (1997) (where the rule in *Heck* was extended to preclude Section 1983 claims challenging procedural deficiencies that necessarily imply the invalidity of the outcome of a prison disciplinary proceeding). Shakur challenges the DOC's disciplinary actions where habeas review was available, so they are not presentable pursuant to *Heck* and *Edwards* as a Section 1983 Action. *See, e.g., Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir 2004) (observing that State prisoners seeking to challenge administrative orders revoking good time credits or equivalent sentence-shortening mechanisms must seek habeas corpus).

[22] We also reject Shakur's argument that the DOC Officials waived applicability of the *Heck* and *Edwards* rules because they failed to plead the issue as an affirmative defense. Even though Indiana Trial Rule 8(C) generally requires responsive pleadings to raise affirmative defenses, trial courts may exercise their discretion and entertain affirmative defenses that are not raised in a responsive pleading. *Oshinski v. N. Indiana Commuter Transp. Dist.*, 843 N.E.2d 536, 538 (Ind. Ct. App. 2006). Here, the trial court considered and ruled on the DOC Officials' *Heck* and *Edwards* claims in its summary judgment order. And while the DOC Officials did not make specific references to *Heck* and *Edwards* in their Answer to Shakur's complaint, they asserted that the trial court lacked "subject matter jurisdiction over all claims relating to or arising out of prison discipline"

and then went on to address the *Heck* and *Edwards* issue in their summary judgment motion. *Appellant's Appendix Vol. II* at 49. Thus, the trial court and Shakur were on notice that the DOC Officials intended to argue that the trial court lacked the authority to adjudicate Shakur's contentions as they related to prison discipline. That said, Shakur's claim that the DOC Officials waived the applicability of the *Heck* and *Edwards* limitations, fails.

[23] Finally, we note that Shakur's claims that arguably are not precluded by *Heck* and *Edwards* are those that involved the two disciplinary proceedings that occurred after October 4, 2017. In both those instances, Shakur was sanctioned with separate six-month terms of disciplinary segregation *after* the balance of his 3,190 days of credit time had already been revoked. Shakur, however, did not treat the sanctions that were imposed after October 2017 as separate from the all-encompassing due process violations that he alleged in his complaint until he raised that issue in his reply brief on appeal. As a result, Shakur has waived the issue. *See, e.g., Lafayette Rentals, Inc. v. Low Cost Spay-Neuter Clinic, Inc.,* 207 N.E.3d 1222, 1233 n.1 (Ind. Ct. App. 2023) (holding that an appellant is precluded from raising an issue for the first time in his reply brief).

[24] Waiver notwithstanding, the designated evidence demonstrates that Shakur has not served the sanctions that were imposed after October 2017. More specifically, because of the earlier conduct violations and sanctions that were imposed, the 2017 sanctions were not set to commence until 2020. Shakur, however, was transferred to the Virginia Correctional Center in December 2018, at which time he was no longer housed in disciplinary segregation. As

Shakur did not serve any part of those sanctions, he has failed to demonstrate any injury that resulted from the DOC Officials' actions. Thus, Shakur was without standing to bring a Section 1983 Action on those claims. *See, e.g.*, *Solarize Indiana, Inc. v. S. Indiana Gas & Elec. Co.*, 182 N.E.3d 212, 218 (Ind. 2022) (standing requires a party to show that he has suffered or was in immediate danger of suffering a direct injury as result of the complained of conduct). For all these reasons, Shakur's due process challenges fail, and we conclude that the trial court properly granted summary judgment in the DOC Officials' favor as to those claims.

## II. Eighth Amendment Challenges

[25] Shakur argues that the trial court erred in granting the DOC Officials' motion for summary judgment on his Eighth Amendment claim because genuine issues of material fact exist as to whether the DOC Officials failed to protect him and provide him with necessary medical care.

[26] When a prisoner raises an Eighth Amendment claim, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, Shakur would be required to show that the DOC Officials were "deliberately indifferent" to his "serious medical needs." *See Ratliff v. Cohn,* 693 N.E.2d 530, 544 (Ind. 1998). Deliberate indifference has been defined as "something approaching a total unconcern for a prisoner's welfare in the face of serious risks" or a "conscious,

culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). It must be established that the DOC Officials were "subjectively aware of and intentionally disregarded an objectively serious risk to his health or safety." *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022), *cert. denied*. Also, before prison officials can be held liable for an Eighth Amendment violation, the plaintiff must articulate the conditions of confinement that he is challenging with specificity. *Id.* Challenges "to conditions of confinement cannot be aggregated and considered in combination unless 'they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

[27] In this case, the essence of Shakur's Eighth Amendment claim is that the DOC Officials failed to protect his mental health when they placed him in restrictive housing. Shakur does not specify what conditions of restrictive housing contributed to the harm he alleges. Rather, the designated evidence Shakur presented assumes that his segregation from the general prison population caused him to suffer psychiatric symptoms. For Eighth Amendment liability to attach, a serious injury or medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).

[28] It is not established here that the DOC Officials were deliberately indifferent to Shakur's sufficiently serious injury or medical need. Shakur averred in his affidavit that he experienced symptoms of post-traumatic stress disorder, heard voices, and had suicidal ideation. These assertions, however, were not supported with a medical diagnosis. Shakur only presented a secondary source that described various psychiatric conditions that might result from prolonged isolation in restrictive housing. The author of that work, however, did not diagnose *Shakur* with any of those illnesses. To the contrary, the medical evidence that does exist, i.e., a competency evaluation conducted by a psychiatrist at the Indiana University School of Medicine, established that Shakur was not suffering from a psychiatric illness. That report specifically stated that "[Shakur] did not appear to meet criteria for diagnosis with any anxiety, mood, psychotic, personality . . . trauma disorder, . . . or signs of psychosis." *Appellant's Appendix Vol. II* at 160.

[29] The designated evidence establishes as a matter of law that the DOC Officials were not indifferent to Shakur's mental health to the extent that he could be negatively affected from disciplinary segregation. Shakur had weekly access to mental health care professionals during his incarceration, and he admitted that mental health care providers visited him "one day per week" to check on his well-being. *Id.* at 230. Although Shakur alleged that those visits were short, he further admitted that he could have lengthier conversations on occasion and request a mental health care provider in addition to the weekly visits. As a result, the undisputed material facts establish that the components of the

deliberate-indifference test could not be satisfied here. Thus, Shakur cannot challenge the overall conditions of his confinement, and the psychiatric illnesses he complains of did not amount to objectively serious harm. *See Ratliff,* 693 N.E.2d 530 at 44.

[30] In sum, the designated evidence established that Shakur was provided with regular access to medical care, and there is no evidence that the DOC Officials were deliberately indifferent to the conditions of Shakur's confinement. Thus, Shakur's Eighth Amendment claims fail as a matter of law, and we conclude that the trial court properly granted the DOC Officials' motion for summary judgment as to those contentions.

[31] Judgment affirmed.

Bradford, J. and Felix, J., concur.

ATTORNEY FOR APPELLANT

Christopher C. Myers
Ft. Wayne, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana